William T. McNEA et al., Plaintiffs,

v.

Lloyd GAREY et al., Defendants.

No. C76–920.

United States District Court,
N. D. Ohio, E. D.

Sept. 30, 1976.

---

**29.** *See* footnote 19, supra.

James L. Oakar, John R. Climaco, Paul S. Lefkowitz, Cleveland, Ohio, for plaintiffs.

Vincent C. Campanella, Director of Law, Howard H. Fishkin, Asst. Director of Law, Cleveland, Ohio, for defendants.

1. A motion to intervene as a party-plaintiff was filed on September 1, 1976 by Richard Faragher and the Fraternal Order of Police [F.O.P.]. The motion was granted that same day.

## ORDER PARTIALLY GRANTING PLAINTIFFS' MOTION FOR A PERMANENT INJUNCTION

MANOS, District Judge.

This action for declaratory judgment and injunctive relief is initiated under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and 28 U.S.C. § 2201. Jurisdiction is based on 28 U.S.C. § 1331. The matter in controversy exceeds $10,000.

On August 31, 1976 William T. McNea, Robert Nowakowski, and the Cleveland Police Patrolmen's Association [C.P.P.A.], on behalf of themselves and for all Cleveland policemen, filed a motion for a temporary restraining order to enjoin and restrain the defendants [1] from:

"1. Ordering any further reports in connection with any investigation concerning political activity based directly or indirectly on any of the Orders, Rules, Civil Service Rules, or Charter provisions mentioned in the Complaint.

"2. Filing any charges against any member of the Cleveland Police Department based in whole or in part on any of the Orders, Rules, Civil Service Rules, or Charter provisions mentioned in the Complaint.

"3. Causing any transfer, change of duty or assignment of plaintiffs McNea or Nowakowski or of the officers or trustees of the Cleveland Patrolmen's Association.

"4. Taking any form of detrimental action against plaintiffs in retaliation for the filing of this lawsuit."

A temporary restraining order was issued by this Court on September 3, 1976, enjoining the defendants from enforcing "rules of conduct and discipline for officers, members and employees, of the Division of Police in the Department of Public Safety," Numbers 47 and 75.[2] On September 9 and 10 a

2. In addition the Court found Section 140 of the Cleveland City Charter to be, in all probability, constitutional on its face and as applied. The other sections that are judged in this opinion,

hearing on the motion for a permanent injunction was held.[3]

## I.

### THE ALLEGATIONS

The plaintiffs argue that the City of Cleveland imposes an unconstitutional restraint on all Cleveland policemen's First Amendment rights of freedom of speech, and association through the City's promulgation of the following: "rules of conduct and discipline for the officers, members and employees of the Division of Police in the Department of Public Safety," [Rules] Numbers 47 and 75, Section 140 of the Charter of the City of Cleveland [Section 140], Cleveland Civil Service Commission Rule 9.10–16 [9.10–16], General Police Order 40–75 [40–75], and General Police Rule 103 [103].[4] The plaintiffs contend that these provisions are unconstitutionally vague and overbroad on their face and as applied to plaintiffs McNea, Nowakowski and Faragher, and that the defendants knowingly, willfully and maliciously enforced the allegedly unconstitutional provision by taking disciplinary action predicated on those rules.

The plaintiffs specifically allege: that the City demoted Patrolman Robert Nowakowski under Rules 47 and 75, Section 140 and 9.10–16, for the alleged political activity of attending a meeting of policemen during his non-working hours; that Nowakowski, along with 60 other policemen were required, under duress, to answer 13 questions concerning their activity at the meeting in question; and that Nowakowski's personal life was investigated by order of defendants Garey and Carney in order to gather information to support the Department's decision to demote him.[5] The plaintiffs further claim that Policeman William McNea has

been notified that he may be deprived of 160 hours of accrued furlough time by the Department, under Rules 47 and 75, Section 140 and 9.10–16 for alleged political activity, and that McNea has been subject to continued harassment by the Department because of his association with the Cleveland Police Patrolmen's Association. The intervening plaintiffs allege that Richard Faragher has been threatened with departmental charges under 40–75 for visiting the offices of the President of Cleveland City Council and other public officials.

The provisions which plaintiffs attack read as follows:

Original Rule 47 reads as follows:

"Officers and members are forbidden to carry on political or religious discussions between themselves or with citizens; and shall exercise their right of suffrage quietly. They shall avoid any and all disparaging conversation detrimental to the Division of Police or its officers and members."

Rule 47 was amended on February 25, 1976 to read:

"The following rules contained therein are to be considered effective immediately, replacing Rule 47 of the present manual of rules—

"Personnel of the Division of Police shall not—

"3.14 . . . Carry on political or religious discussions between themselves or with citizens, while on duty.

"3.15 . . . Engage publicly in any disparaging conversation detrimental to the division of police or its personnel.

"Commanding officers shall familiarize themselves with these rules and shall cause them to be read at roll calls for the next three days.

40–75, 9.10–16 and 103 were not dealt with in the temporary restraining order because they either were not raised at the time or the argument concerning their alleged unconstitutionality was not sufficiently specific.

**3.** By agreement of the parties the hearing on the preliminary injunction was consolidated with the hearing for a permanent injunction.

**4.** The Court uses the term *regulations* to mean all the constitutionally challenged rules, orders and the Charter provision.

**5.** Nowakowski specifically claims that the defendants unsuccessfully attempted to induce his ex-wife and ex-mother-in-law to file criminal charges against him in order to improperly support the decision to demote him.

"The issuance of this portion of the revised manual of rules, regulations and procedures has been requested by the Law Department in connection with a legal action pending in Federal Court and shall not be construed as having any political overtones."

*See*, Exhibit B attached to the Complaint.

Rule 38 pertinently reads:

"Officers and members of the Division of Police shall not engage in any other gainful occupation; and for purposes of discipline they shall be considered to be on duty at all times." *See*, Exhibit D attached to the Complaint.

Rule 75 pertinently reads:

"Officers and members . . . . shall be connected in no way, directly or indirectly, with any political organization." *See*, Exhibit C attached to the Complaint.

Section 140 reads:

"No person in the service of the City shall discharge, suspend, lay off, reduce in grade or in any manner change the official rank or compensation of any person in such service, or promise or threaten to do so, for withholding or neglecting to make any contribution of money or service or any valuable thing for any political purpose. No person in the service of the City shall use his official authority to influence or coerce the political action of any person or body, or to interfere with any nomination or election to public office. No person in the classified service of the City shall act as an officer of a political campaign, or serve as a member of a committee of any such organization, or circulate or seek signatures to any petition provided for by primary or election laws, or act as a worker in favor of or in opposition to any candidate for public office." *See*, Plaintiffs' Exhibit 2. (underscoring added)

9.10–16 pertinently reads:

"But any officer or employee in the classified service may be discharged, suspended or demoted for any one or more of the following:

. . .

"16. The use or attempt to use political influence or authority upon any person in the service, or engaging in any political activity, such as are prohibited by Civil Service Laws or the Rules of the Civil Service Commission." *See*, Plaintiffs' Exhibit 1.

40–75 pertinently reads:

"The Chief or designated Acting Chief, alone, may authorize the initiation of business or visits with the office of the Mayor, Director of Public Safety, or any other public office or at City Hall." *See*, Plaintiffs' Exhibit 3.

General Police Rule 103 reads:

"Officers or members of the Division of Police shall not visit the office of the Mayor or the Director of Public Safety, on behalf of themselves or others, without permission from the Chief of Police." *See*, Plaintiffs' Exhibit 13.

The Court, having heard the evidence of the witnesses, having examined the exhibits submitted by plaintiffs, and having heard the arguments of counsel, makes the following findings of fact and conclusions of law.

## II.

### FINDINGS OF FACT

The plaintiffs, William McNea, Robert Nowakowski and Richard Faragher are police officers with the Cleveland Police Department. On May 15, 1976 Nowakowski was promoted to the rank of Sergeant in the Cleveland Police Department. On August 14, 1976, Nowakowski was demoted to Patrolman by James T. Carney, the Director of Public Safety. The reasons stated for his demotion were "because of unsatisfactory probationary report." *See*, Plaintiffs' Exhibit 10. Lloyd Garey, Chief of Police for the City of Cleveland, testified that he recommended Nowakowski's demotion because of Nowakowski's participation in "political activity." Garey was uncertain as to the rules or regulations that Nowakowski had allegedly violated, but thought they included Section 140 and 9.10–16.

Garey also testified that William McNea was about to be charged for political activity under Section 140 and 9.10–16.

Richard Faragher testified that charges had been drafted against him under 40–75 and 103 because he had visited the offices of Cleveland City Council President George Forbes. Faragher stated that he visited with council members and the Mayor's staff in his official capacity as President of the F.O.P. on numerous occasions in regard to matters concerning the welfare of police officers. George Forbes and James Carney testified that they had held numerous discussions with Faragher concerning varied topics of importance to the members of the Fraternal Order of Police.

This Court finds that the plaintiff Robert Nowakowski has failed to introduce any evidence that Rules 47 and 75 were applied to him or that they were the basis for his demotion. Nowakowski has established that his demotion was based at least in part on 9.10–16 and Section 140. Likewise William McNea has failed to show that Rules 47 and 75 were applied to him but has established that Section 140 and 9.10–16 are the basis for charges to be brought against him by the Police Department. Finally this Court finds that charges are about to be filed against Richard Faragher which are based, in part, on an alleged violation of 40–75.

### III.

### CONCLUSIONS OF LAW

#### A. STANDING

 In order to challenge the Police Department's rules and regulations each of the plaintiffs must establish that they possess standing to protect the First Amendment rights allegedly violated. Generally a plaintiff only has standing to attack the constitutionality of rules and regulations that have affected his interests, *i. e.*, those rules or regulations that have been *applied* to him. As the Supreme Court stated:

"Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the court." *Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973).

 However, the Supreme Court recognizes an exception to the general standing rules when a party claims that First Amendment rights are impinged by an overly broad statute. In such cases the law recognizes that the individuals to whom a statute may be lawfully applied, are permitted to challenge the statute as overbroad on its face.[6] See, *Dombrowski v. Pfister*, 380 U.S. 479, 486, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *Grayned v. City of Rockford*, 408 U.S. 104, 114, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Gooding v. Wilson*, 405 U.S. 518, 520–21, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Coates v. City of Cincinnati*, 402 U.S. 611, 616, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Thornhill v. Alabama*, 310 U.S. 88, 97–98, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). The United States Supreme Court recently stated the rationale justifying *ius tertii* [third party] standing in First Amendment facial overbreadth cases.

"This 'exception to the usual rules governing standing,' *Dombrowski v. Pfister*, 380 U.S., at 486, 85 S.Ct. 1116, reflects the transcendent value to all society of constitutionally protected expression. We give a defendant standing to challenge a statute on grounds that it is facially overbroad, regardless of whether his own conduct could be regulated by a more narrowly drawn statute, because of the 'danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and

---

**6.** A statute is overbroad on its face if it reaches and restricts the constitutionally protected rights of potential litigants, as well as restrict-

ing conduct which is not constitutionally protected.

improper application.' *N.A.A.C.P. v. Button*, 371 U.S. 415, at 433, 83 S.Ct. 328, 9 L.Ed.2d 405." *See, Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 2230, 44 L.Ed.2d 600 (1975). *See also, Young v. American Mini Theatres Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 2447, fn. 17, 49 L.Ed.2d 310 (1976).

*Ius tertii* or third party standing to raise facial overbreadth will not be granted to a litigant against whom the challenged statute is applied if there is presently an alternative litigant who is also challenging the facial invalidity of the statute and against whom the statute is *not* applied. This rule insures that a party, who may have participated in unprotected and punishable activity will be allowed to raise facial overbreadth only when no alternative party is available to dispel a possible chilling effect on First Amendment rights.[7] Therefore in order to determine whether McNea, Nowakowski and Faragher have standing to attack the regulations as unconstitutional on their face, the standing of the C.P.P.A. and the F.O.P. must first be determined.

The C.P.P.A. is a non-profit corporation organized under the laws of the State of Ohio with a membership of 1,000 Cleveland patrolmen. The F.O.P., Lodge 8, is a local organization representing over 1,000 members of the Cleveland Police Force. The C.P.P.A. and the F.O.P. seek to assert the First Amendment rights of its members to protect them from allegedly overbroad and vague rules and regulations. Organizations similar in nature to the F.O.P. and the C.P.P.A. have been granted such standing in the past. In *N.A.A.C.P. v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) a non-profit membership association opposed an order of a state court requiring the organization to disclose its membership list on the theory that it was entitled to assert *its members'* First Amendment right to free association. In holding that the N.A.A.C.P. possessed the requisite standing the U.S. Supreme Court wrote:

> "The Association . . . urges that . . . it may assert, on behalf of its members, a right personal to them to be protected from compelled disclosure by the State of their affiliation with the

Such a situation is analogous to that which faced the United States Supreme Court in *Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 2229–30, 44 L.Ed.2d 600 (1975). In *Bigelow* the court analyzed a statute which the defendant claimed was invalid as applied, and facially overbroad. Subsequent to Bigelow's conviction, but before the case reached the U.S. Supreme Court, the statute was amended in a fashion which disposed of the facially overbroad reach of the enactment. In refusing to pass on Bigelow's facial overbreadth claim the majority wrote:

"In view of the statute's amendment since Bigelow's conviction in such a way as 'effectively to repeal' its prior application, there is no possibility now that the statute's pre-1972 form will be applied again to appellant *or will chill the rights of others.* As a practical matter, the issue of its overbreadth has become moot for the future. We therefore decline to rest our decision on overbreadth and we pass on to the further inquiry, of greater moment not only for Bigelow but for others, whether the statute as applied to appellant infringed constitutionally protected speech." (emphasis added). *Bigelow, supra* at 2230.

---

7. A court may grant *ius tertii* standing to raise facial overbreadth to a litigant against whom rules and regulations may constitutionally be applied in order to avoid the chilling effect of those rules upon others to whom the rules have not yet been applied. Thus, in *Young v. American Mini Theatres Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 2447, fn. 17, 49 L.Ed.2d 310 (1976) the Supreme Court wrote:

" '. . . [C]laims of facial overbreadth have been entertained in cases involving statutes which, by their terms, seek to regulate only spoken words.' . . . In such cases it has been the judgment of this Court that the possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted and perceived grievances left to fester because of the possible inhibitory effects of overly broad statutes."

However, when a litigant to whom the rules have not yet been applied is also a party seeking a declaration that the rules are facially overbroad, there is no need for the court to grant *ius tertii* standing to the party to whom the rules have been applied because the litigant to whom the rules have not yet been applied is in a position to adequately dispel the chilling effect caused by the overbreadth of the rule.

Association as revealed by the membership lists. We think that petitioner argues more appropriately the rights of its members, and that its nexus with them is sufficient to permit that it act as their representative before this Court. In so concluding, we reject respondent's argument that the Association lacks standing to assert here constitutional rights pertaining to the members, who are not of course parties to the litigation."[8] *N.A.A.C.P. v. Alabama, supra,* 357 U.S. at 458–59, 78 S.Ct. at 1170.

In cases subsequent to *N.A.A.C.P. v. Alabama,* the Supreme Court consistently expanded the standing of political and employee organizations to implement the First Amendment rights of their members through litigation. *See, N.A.A.C.P. v. Button,* 371 U.S. 415, 428–29, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Brotherhood of Railway Trainmen v. Virginia ex rel. Virginia State Bar,* 377 U.S. 1, 5–8, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1967); *United Transportation Union v. State Bar of Michigan,* 401 U.S. 576, 579–81, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971). Recent cases have reaffirmed organizations' standing to implement their members' fundamental First Amendment rights. *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 631, 46 L.Ed.2d 659 fn. 10; *United States Civil Service Commission v. National Association of Letter Carriers,* 413 U.S. 548, 551, fns. 2, 3, 580–81, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). *See also, Bates v. City of Little Rock,* 361 U.S. 516, 523, 80 S.Ct. 412, 4 L.Ed.2d 480, fn. 9 (1960); *Louisiana ex rel. Gremillion v. N.A.A.C.P.,* 366 U.S. 293, 296, 81 S.Ct. 1333, 6 L.Ed.2d 301

(1961) (Preliminary Injunction). The Court concludes that the C.P.P.A. and the F.O.P. sustain standing to assert the First Amendment rights of their members who charge that the City's rules impermissibly intrude into First Amendment protections through overbreadth and vagueness. *See also Pierce v. Society of Sisters,* 268 U.S. 510, 534–36, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 183–87, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Concurring Opinion). Further, because the C.P.P.A. and the F.O.P. have standing to raise the issue of the alleged facial overbreadth of the regulations, the plaintiffs McNea, Nowakowski and Faragher do not have standing to raise facial overbreadth.[9] McNea,[10] Nowakowski and Faragher do have standing to raise the constitutionality of the City's rules as applied to them individually and as being unconstitutionally vague.

## B. ABSTENTION AND EXHAUSTION

The Court finds that it is not required to abstain from assuming jurisdiction over the C.P.P.A. and F.O.P.'s § 1983 and § 2201 complaint, which allege that the defendants acted "knowingly," "willfully," and "maliciously," because neither the C.P.P.A. nor the F.O.P. seek to enjoin a pending state criminal prosecution, *see, Younger v. Harris,* 401 U.S. 37, 49–54, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); 28 U.S.C. § 2283; *Perez v. Ledesma,* 401 U.S. 82, 84–86, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); nor do they seek a declaratory judgment ruling that *any* pending state criminal or civil litigation is currently violating their First Amendment

---

**8.** *See also, Pierce v. Society of Sisters,* 268 U.S. 510, 534–36, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 183–87, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Concurring Opinion).

**9.** *See,* footnote 7, *supra.*

**10.** No charges have at this time been filed against McNea for his alleged "political activity," or Faragher for his meetings with City Council members, but because of the very real threat that charges will be presently filed they have sufficient personal adversary interests to attack the statutes as they have been threat-

ened to be applied. *See, Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 2230, 44 L.Ed.2d 600 (1975); *Accord Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); *cf., United Public Workers v. Mitchell,* 330 U.S. 75, 89–90, 67 S.Ct. 556, 91 L.Ed. 754 (1947) (in which four appellants were dismissed because they had not been charged under the Hatch Act *and* "[n]o threat of interference by the Commission with the rights of these appellants appears beyond that implied by the existence of the law and the regulations." *Id.* at 91, 67 S.Ct. at 565.

rights, *see, Younger, supra,* 401 U.S. at 41, 91 S.Ct. 746, fn. 2; *Samuels v. Mackell,* 401 U.S. 66, 71–74, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); *Perez, supra* at 98–131 (Mr. Justice Brennan's Separate Opinion); *Steffel v. Thompson,* 415 U.S. 452, 459–75, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Hicks v. Miranda,* 422 U.S. 332, 348–52, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975); *see also, Huffman v. Pursue,* 420 U.S. 592, 607–11, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). The abstention doctrine does not preclude the plaintiffs from litigating the constitutionality of the City's rules in this federal court because the Court has not been advised of any state judicial proceedings relevant to the C.P.P.A. or F.O.P.'s action here. *See, Doran v. Salem Inn Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 2567–68, 45 L.Ed.2d 648 (1975) (Preliminary Injunction granted where no state court proceedings were pending); *Kusper v. Pontikes,* 414 U.S. 51, 54–55, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973).

▮ Furthermore, plaintiffs are not required to exhaust their state administrative remedies before litigating their § 1983 injunctive action in federal court. *See, McNeese v. Board of Education,* 373 U.S. 668, 671–76, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *Damico v. California,* 389 U.S. 416, 417, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); *King v. Smith,* 392 U.S. 309, 312, fn. 4, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *Houghton v. Shafer,* 392 U.S. 639, 640, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); *Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); *Wilwording v.*

*Swenson,* 404 U.S. 249, 251, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); *but see, Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 2602, 49 L.Ed.2d 415 fn. * (1976) (Powell, J. Concurring); and *cf., Preiser v. Rodriguez,* 411 U.S. 475, 492, fn. 10, 93 S.Ct. 1827, 36 L.Ed.2d 439.

## C. CONSTITUTIONALITY OF RULES 47 and 75, SECTION 140, 9.10–16, 40–75 and 103

### VAGUENESS

▮ As the Supreme Court has stated, "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972) [11]; *See, e. g., Rose v. Locke,* 423 U.S. 48, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975); *Smith v. Goguen,* 415 U.S. 566, 572–73, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). Vagueness in the First Amendment area in particular must be strictly curtailed because ambiguity may inhibit citizens from exercising their fundamental constitutional rights. Therefore, when a statute or regulation impinges on the "penumbra" [12] of rights covered by the First Amendment then "a greater degree of specificity than in other contexts" is demanded. *Goguen, supra* at 573, 94 S.Ct. at 1247; *see also, Grayned, supra,* 408 U.S. at 109, 92 S.Ct. 2294. The standard used in determining whether a challenged rule is vague is whether "men of common intelligence must necessarily guess at its meaning." *Broadrick v. Oklahoma,*

---

**11.** The rights that are protected by the vagueness rule were summed up in *Grayned*:

"Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attend-

ant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to ' "steer far wider of the unlawful zone" . . . than if the boundaries of the forbidden area were clearly marked.' " *Id.* at 108–109, 92 S.Ct. at 2298 [footnotes deleted].

**12.** *See,* discussion in *Griswold v. State of Connecticut,* 381 U.S. 479, 484–85, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) which describes the Supreme Court's doctrine of penumbral rights.

413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973); *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Applying this standard the Court now reviews the alleged vagueness of the challenged statutes.

## 40–75

 40–75 requires that permission of the Chief of Police be obtained before a policeman may visit or initiate business with the "Office of the Mayor, Director of Public Safety or any other *public official*" (emphasis added). The designation "public official," standing alone without qualification, is so over-inclusive that it is vague. A "public official" could include an officer in the army, a fireman, a judge, a city councilman or a host of other employees of the federal, state or local governments. Men of common intelligence must guess as to when they are required to obtain the police chief's approval for a visit. Therefore, 40–75 is constitutionally infirm because of vagueness.

## 103

 103 prohibits members of the Division of Police from visiting the Office of the Mayor or the Director of Public Safety without permission. The prohibitions of the Rule are clear. The requirements of 103 can be readily understood by men of common intelligence. Rule 103 is not unconstitutionally vague.

## SECTION 140 AND 9.10–16

 Section 140 sets out in plain and specific language a prohibition of persons in the classified service participating in political activity. As the Supreme Court stated in discussing a similarly worded statute, "whatever other problems there are with . . . [the statute] . . ., it is all but frivolous to suggest that the Section

fails to give adequate warning of what activities it proscribes . . .." *Broadrick v. Oklahoma,* 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973).

 9.10–16, on the record before this Court, restricts civil service employees from engaging in "political activity" to the extent set out in "civil service laws or the rules of the Civil Service Commission." The meaning of 9.10–16 is clear and is easily understandable. Neither Section 140 nor 9.10–16 are unconstitutionally vague.

## RULE 47

 Rule 47 restricts discussions of politics and religion. The language is precise. The prohibited conduct is clear. Rule 47 is not unconstitutionally vague.

## RULE 75

 Rule 75 prohibits police department employees from having "direct or indirect connection" with "political organizations." This Rule simply prohibits any associations between police officers and organizations dealing with politics, partisan or otherwise. It is not unconstitutionally vague.

## D. OVERBREADTH

 "A clear and precise enactment may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct." *Grayned, supra,* 408 U.S at 114, 92 S.Ct. at 2302. A party may challenge a statute as being overbroad [13] in two fashions: first, he may attack the statute as facially overbroad; second, he may attack the application of the statute by arguing that the statute was applied to him in an unconstitutional manner. In the instant case the regulations are *facially* unconstitutional if, the language of the regulations, as they are written, punish conduct [14] protect-

---

**13.** A federal court may not place a narrowing interpretation on a state statute, ordinance, rule or regulation. *See, Gooding v. Wilson,* 405 U.S. 518, 520, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *United States v. Thirty-seven Photographs,* 402 U.S. 363, 369, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971); *Compare, Grayned v. City*

*of Rockford,* 408 U.S. 104, 114–21, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

**14.** Conduct as used here can either be expression or action or a combination of both. *See,* Emerson, *The System of Freedom of Expression,* p. 17, Vintage, 1970.

ed by the First and Fourteenth Amendments, rendering the regulations overbroad in their reach; and the government's interest in restricting that conduct is insufficient in comparison to the encroachment on the constitutional rights involved or, if there is a sufficient governmental interest to justify the restriction, the narrowest means consistent with the furtherance of that interest is not employed. The regulations are unconstitutional *as applied* if they are enforced against a particular party so as to punish conduct protected by the First and Fourteenth Amendments, and, as stated above, the governmental interest is insufficient to justify the regulations or the narrowest means have not been employed.

### RULE 47

The C.P.P.A. and the F.O.P. complain that Rule 47 when read in conjunction with Rule 38 [15], imposes, on its face,[16] an unconstitutional restraint on the First Amendment right of freedom of speech because it prohibits a policeman from discussing religion or politics at any and all times. Relying on *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) defendants argue in their pretrial brief that Rule 47 is not overly broad, and that the *Broadrick* court found a similarly worded statute proper. This Court finds the defendants' application of *Broadrick* unpersuasive.

The *Broadrick* court found Oklahoma Stat.Ann. Tit. 74, § 818 (Okl. § 818), which regulated speech related to political action, "slightly overbroad," *see, Broadrick, id.* at 616, 93 S.Ct. 2908. Okl. § 818 reads as follows:

"[6] No employee in the classified service, and no member of the Personnel Board shall, directly, or indirectly, solicit, receive, or in any manner be concerned in soliciting or receiving any assessment, subscription or contribution for any political organization, candidacy or other political purpose; and no state officer or state employee in the unclassified service shall solicit or receive any such assessment, subscription or contribution from an employee in the classified service.

"[7] No employee in the classified service shall be a member of any national, state or local committee of a political party, or an officer or member of a committee of a partisan political club, or a candidate for nomination or election to any paid public office, or *shall take part in the management or affairs of any political party or in any political campaign,* except to exercise his right as a citizen privately to express his opinion and to cast his vote. *Broadrick, id.* at 604, fn. 1, 93 S.Ct. 2908 (emphasis added).

▮▮▮ The statute challenged in *Broadrick,* § 818, restricted *specifically* defined political and associational *action* such as soliciting contributions for a partisan political party. The *Broadrick* statute specifically exempted from the sweep of the statute the private *expression* of a political opinion. On the other hand, Rule 47, on its face, restricts all political and religious *expression* at all times. In its broad stroke it sweeps within it the core of the First Amendment; the fundamental right to freedom of speech; therefore Rule 47 is overbroad.

Rule 47, standing alone, is overbroad as it punishes free expression.

**15.** Rule 47 prohibits political and religious discussion "while on duty." Rule 38 states: ". . . for purposes of discipline they [police officers] shall be considered to be on duty at all times." The plaintiff argues that Rules 47 and 38 together on their face and mean that police officers cannot discuss politics or religion at any time, even while in the privacy of their own home. No alternate interpretation of the phrase "while on duty" has been proposed by the defendant. The Court, adopts the interpretation of the plaintiff. The Court does note that even if this interpretation of what "on duty" means turns out to be incorrect, that

**16.** Both McNea and Nowakowski have attacked Rule 47 as applied to them and on its face. Because the F.O.P. and the C.P.P.A. are presently attacking Rule 47 on its face McNea and Nowakowski are denied *ius tertii* standing to also attack Rule 47 on its face. *See,* fn. 7, *supra.* Further, because neither McNea nor Nowakowski have shown that the Rule was applied to them, *see,* Finding of Facts, *supra,* there is no validity to their claim that 47 was unconstitutionally applied.

GOVERNMENTAL INTEREST [17]

██ Pure speech or expression [18] cannot be constitutionally restricted without the government showing an interest of "paramount" and "vital" importance necessitating the restriction. *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). In *Elrod* the United States Supreme Court recognized that public employees retain a core First Amendment right to enjoy basic political associations, and that the government must select the narrowest means in regulating that fundamental interest. *Elrod* held that Chicago Sheriff's deputies could not be discharged solely because they enjoyed political associations different from their elected superior. The *Elrod* court instructively reviewed the major cases pertinent to the litigation currently pending before this Court.

"Our concern with the impact of patronage on political believe (sic) and association does not occur in the abstract, for political belief and association constitute the core of those activities protected by the First Amendment . . .. And, though freedom of belief is central, '[t]he First Amendment protects political association as well as political expression.' *Buckley v. Valeo, supra,* 424 U.S. [1] at 11, [96 S.Ct. 612, 46 L.Ed.2d 659]. 'There can no longer be any doubt that freedom to associate with others for the common advancement of political beliefs and ideas is a form of "orderly group activity" protected by the First and Fourteenth Amendments. *N.A.A.C.P. v. Button,* 371 U.S. 415, 435 [83 S.Ct. 328, 9 L.Ed.2d 405]; *Bates v. Little Rock,* 361 U.S. 516, 522–523 [80 S.Ct. 412, 4 L.Ed.2d 480]; *N.A.A. C.P. v. Alabama,* 357 U.S. 449, 460–461 [78 S.Ct. 1163, 2 L.Ed.2d 1488]. The right

to associate with the political party of one's choice is an integral part of this basic constitutional freedom.' *Kusper v. Pontikes,* 414 U.S. 51, 56–57 [94 S.Ct. 303, 38 L.Ed.2d 260] (1973).

"These protections reflect our profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open,' *New York Times Co. v. Sullivan,* 376 U.S. 254, 270 [84 S.Ct. 710, 11 L.Ed.2d 686] (1964), a principle itself reflective of the fundamental understanding that '[c]ompetition in ideas and governmental policies is at the core of our electoral process . . .' *Williams v. Rhodes, supra,* 393 U.S. [23] at 32 [89 S.Ct. 5, 21 L.Ed.2d 24] . . ." *See, Elrod, supra* at 2681.

The *Elrod* court set forth the test for evaluating the legitimacy of state government's regulation of a state employee's First Amendment right to political association when it wrote:

". . . [I]t is necessary to have in mind the standards according to which their sufficiency is to be measured. It is firmly established that a significant impairment of First Amendment rights must survive exacting scrutiny. *Buckley v. Valeo, supra,* 424 U.S. at 59 [96 S.Ct. 612, 46 L.Ed.2d 659]; *N.A.A.C.P. v. Alabama, supra,* 357 U.S. at 460–61 [78 S.Ct. 1163, 2 L.Ed.2d 1488]. 'This type of scrutiny is necessary even if any deterrent effect on the exercise of First Amendment rights arises, not through direct government action, but indirectly as an unintended but inevitable result of the government's conduct . . . .' *Buckley v. Valeo, supra,* 424 U.S. at 59 [96 S.Ct. 612, 46 L.Ed.2d 659]. Thus encroachment 'cannot be justified upon a

---

17. Having found Rule 47 overbroad the Court must determine what governmental interest is served by the overbroad portion of Rule 47, whether that governmental interest arises to the prima facie level required to justify the restriction and if the government interest does arise to that prima facie level, whether on balancing the government's interest versus the interest in protecting free expression, the overbreadth should be allowed or not.

18. Pure speech or expression is the communication of ideas, mainly by speaking or writing, but includes all forms of symbolic speech where the physical action element is limited to the extent necessary to transmit the message. *See generally,* Emerson, *The System of Freedom of Expression,* pp. 17–18, Vintage 1970.

mere showing of some legitimate state interest.' *Kusper v. Pontikes,* 414 U.S. 51, 58 [94 S.Ct. 303, 38 L.Ed.2d 260]. The interest advanced must be paramount, one of vital importance, and the burden is on the Government to show the existence of such an interest. *Buckley v. Valeo, supra,* 424 U.S. at 88 [96 S.Ct. 612, 46 L.Ed.2d 659]; *Williams v. Rhodes, supra,* 393 U.S. at 31–33 [89 S.Ct. 5, 21 L.Ed.2d 24]; *N.A.A.C.P. v. Button, supra,* 371 U.S. at 438 [83 S.Ct. 328]; *Bates v. City of Little Rock, supra,* 361 U.S. at 524 [80 S.Ct. 412]; *N.A.A.C.P. v. Alabama, supra,* 357 U.S. at 464–466 [78 S.Ct. 1163]; *Thomas v. Collins,* 323 U.S. 516, 530 [65 S.Ct. 315, 89 L.Ed. 430] . . . . [I]t is not enough that the means chosen in furtherance of the interest be rationally related to that end. *Sherbert v. Verner, supra,* 374 U.S. [398] at 406 [83 S.Ct. 1790, 10 L.Ed.2d 965]. The gain to the subordinating interest provided by the means must outweigh the incurred loss of protected rights, see *United Public Workers v. Mitchell, supra,* 330 U.S. [75] at 96, [67 S.Ct. 556, 91 L.Ed. 754] and the Government must 'employ[ ] means closely drawn to avoid unnecessary abridgement . . . .' *Buckley v. Valeo, supra,* 424 U.S. at 20 [96 S.Ct. 612, 46 L.Ed.2d 659] '[A] State may not choose means that unnecessarily restrict constitutionally protected liberty. "Precision of regulation must be the touchstone in an area so closely touching most precious freedoms." If the State has open to it a less drastic way of satisfying its legitimate interests, it may not choose a legislative scheme that broadly stifles the exercise of fundamental personal liberties,' *Kusper v. Pontikes, supra,* 414 U.S. at 59 [94 S.Ct. 303, 38 L.Ed.2d 260]. See *United States v. Robel* [389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508], *supra; Shelton v. Tucker,*

364 U.S. 479 [81 S.Ct. 247, 5 L.Ed.2d 231]. In short, if conditioning the retention of public employment on the employee's support of the in-party is to survive unconstitutional challenge, it must further some vital government end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit gained must outweigh the loss of constitutionally protected rights." *Elrod, supra* at 2684–85.

The only sufficiently paramount or vital governmental interest that could justify the overbroad sweep of Rule 47, or any like restriction on *pure speech* or *expression,* would be a showing that the expression restricted by the Rule constituted a clear and present danger to society. The clear and present danger test was first stated by Justice Oliver Wendell Holmes:

"The question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that congress has a right to prevent." *Schenck v. United States,* 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470 (1919).

*See, Dennis v. United States,* 341 U.S. 494, 505, 71 S.Ct. 857, 95 L.Ed. 1137 (1951); *Carroll v. President and Commissioners of Princess Anne County,* 393 U.S. 175, 180, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968); *Bond v. Floyd,* 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966); *see also, Terminiello v. Chicago,* 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1949); *Cantwell v. Connecticut,* 310 U.S. 296, 308, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). The defendants did not furnish this Court with any facts which indicate that allowing the police of the City of Cleveland to freely express their religious and political opinions creates an imminent threat to the safety of the citizens of Cleveland.[19]

---

**19.** The balancing of the governmental interest versus the effect on the right impinged need not be employed when the government has not made a threshold showing of a clear and present danger when pure speech is involved, or a showing of a substantial governmental interest when speech plus, which will be discussed *infra,* is involved. In this case the defendants were put on notice by the Court's T.R.O. memorandum of the standard which the Court would apply in assessing Rule 47's constitutionality and nevertheless the defendants failed to sustain their burden of production regarding this question.

Rule 47 is facially overbroad in that it impinges on the First Amendment right of freedom of expression of the plaintiffs. No governmental interest for the overbroad portion of the Rule was established. Rule 47 is unconstitutional on its face.[20]

### RULE 75

Rule 75 regulates political associational conduct which the C.P.P.A. and the F.O.P. have standing to protect.

■ Comparing Rule 75 with the *Broadrick* statute, § 818, I find that, on its face, Rule 75 regulates political associational conduct in a broader sweep and with less specificity than § 818. If the Supreme Court can characterize § 818 as "slightly overbroad," *Broadrick, supra,* 413 U.S. at 615, 93 S.Ct. 2908 then Rule 75 is *substantially* overbroad. Rule 75 prohibits the universe of a patrolman's conceivable political associations, regardless of whether those associations are direct or indirect, or enjoyed during non-working hours. Section 818 certainly permitted *indirect* association with a political party such as formal party membership, enjoyed during non-working hours. Rule 75 does not. Section 818 was interpreted to allow associations with non-partisan political organizations. Rule 75 does not. It is clear that Rule 75 impinges on the First Amendment's right to engage in political associational conduct and is therefore overbroad.

■ The right to engage in political associational conduct is an important First Amendment right. *See, Kusper v. Pontikes,* 414 U.S. 51, 57, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973). Because it is action mixed with expression, known as *speech plus,*[21] which is restricted, the courts have recognized that a different less stringent governmental interest standard is to be applied than in the pure speech area. In *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968), the Supreme Court held that government regulation of *conduct related speech,* known as "speech plus" is justified:

". . . if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."[22]

■ The Court recognizes that the City of Cleveland has a substantial interest in preventing its policemen from actively and directly engaging in partisan politics. This substantial interest in regulating the speech plus of government workers has been universally recognized. *See, United States C. Serv. Com'n. v. National Ass'n of Let. Car.,* 413 U.S. 548, 564, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); *Broadrick v. Oklahoma,* 413 U.S. 601, 606, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *United Public Workers of America v. Mitchell,* 330 U.S. 75, 96, 67 S.Ct. 556, 91 L.Ed. 754 (1947). Cleveland's interest in restricting political conduct of its police concerns the necessity to maintain

---

**20.** The Court need not inquire as to whether the restriction was accomplished by the narrowest means, as the government failed to show that it had met the prima facie interest level.

**21.** Conduct or speech plus combines elements of pure speech and action. *See,* Emerson, *The System of Freedom of Expression,* pp. 17–18, Vintage 1970. Because speech plus contains action which may be restricted the government need meet only a threshold substantial interest test before the court will balance the governmental interest versus the effect the encroachment has on the restricted right.

**22.** It is interesting to note that the approach which the Court adopts to the First Amendment closely parallels the emerging approach of the United States Supreme Court with respect to the Equal Protection Clause of the Fourteenth Amendment. *See, Examining Board v. Flores DeOtero,* 426 U.S. 572, 96 S.Ct. 2264, 2281, 49 L.Ed.2d 65 (1976); *In re Griffiths,* 413 U.S. 717, 721–22, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973); *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976).

the practice and appearance of impartial execution of the laws. Total impartiality is essential to effective law enforcement. However, Cleveland has not substantial interest in restricting non-partisan political activity, and the indirect or non-active political connections that are regulated by Rule 75. The Court finds that Cleveland's interest in the overbroad portions of Rule 75 are insufficient. Rule 75 is unconstitutional on its face.[23]

### SECTION 140 AND 9.10–16

■ Section 140 of the Cleveland City Charter and 9.10–16 are attacked as unconstitutionally overbroad on their face by the F.O.P. and the C.P.P.A. and as unconstitutionally overbroad as applied by McNea and Nowakowski. The Court finds that both Section 140, on the record before this Court, and 9.10–16 are constitutional. Both Section 140 and 9.10–16 prohibit persons in the classified service, such as policemen, from participating in specified political activity. Each provision impinges on the constitutionally protected First Amendment right to political association and under the definition of overbreadth stated in *Grayned, supra* 408 U.S. at 114, 92 S.Ct. 2294 are overbroad. But the overbreadth impinges upon a speech protection and as previously discussed in relation to Rule 75 the City of Cleveland has a substantial, unique and vital interest in restricting the type of specific, direct and partisan political activity that Section 140 and 9.10–16 prohibits. In balancing the City's interest in nonpartisan law enforcement against a policeman's right to actively participate in partisan politics the Court finds that the City's interest predominates. Finally, this Court finds that there is no less onerous or narrower means by which the City could further its interest in nonpartisan law enforcement

than those employed in Section 140 and 9.10–16. Section 140 and 9.10–16, on the record, are constitutional on their face.[24] The plaintiffs McNea and Nowakowski complain that Section 140 and 9.10–16 are unconstitutional as applied. No evidence was presented showing an unconstitutional enforcement of either Section 140 or 9.10–16. Section 140 and 9.10–16 were constitutionally applied.

### 40–75

The plaintiffs F.O.P. and C.P.P.A. challenge 40–75 as unconstitutionally overbroad on its face. As the Court previously found, 40–75 so over inclusive as to be vague. Because 40–75 is unconstitutionally vague the Court need not discuss the possibly unconstitutional overbreadth of the order.

### RULE 103

■ The F.O.P. challenges Rule 103 as being facially unconstitutional. Rule 103 restricts visits by police to the Office of the Mayor and the Safety Director. Rule 103 is overbroad in that it impinges on normally protected First Amendment associational rights. It restricts both visits for partisan political purposes and nonpartisan, job related, administrative purposes, such as a visit concerning police scheduling, promotions and pay. However, the City government possesses a vital, substantial interest in restricting both partisan politics and administrative grievance procedures. In order to preserve discipline in the police force a chain of command must be maintained, and that governmental interest predominates when balanced against the rights restricted by Rule 103. Furthermore, Rule 103 is the narrowest means to further that plus area of legitimate and substantial governmental interest.[25] Rule 103 is not unconstitutionally overbroad on its face.

---

**23.** As in the case of Rule 47, the plaintiffs McNea and Nowakowski have no standing to raise facial overbreadth of Rule 75. Rule 75 is not unconstitutional as applied, as they failed to show it was applied. *See, Findings of Facts* and *Standing, supra.*

**24.** In support of the finding that Section 140 and 9.10–16 are constitutional this Court takes note of a similar finding in *Broadrick, supra,* which dealt with a similar statute.

**25.** For example, by channeling complaints to the Mayor or Safety Director through the Police Chief, the City adopts a narrower means than a blanket restriction on all communications with the Mayor or the Safety Director. The plaintiffs have not suggested any means to the Court which are less onerous than the means adopted by this Rule.

IV.

## FINDING AND ORDER

The Court finds that 40–75 is unconstitutionally vague. The defendants Lloyd Garey, James T. Carney, Vincent Campanella, Ralph Perk and The Cleveland Civil Service Commission are permanently enjoined from using 40–75 as the basis for any disciplinary action against the members of the F.O.P., C.P.P.A., and the other named plaintiffs.

The Court finds that Rules 47 and 75 are unconstitutionally overbroad on their face. The defendants are permanently enjoined from using Rules 47 and 75 as the basis for disciplinary action against the members of the F.O.P. and the C.P.P.A.[26]

Section 140, 9.10–16 [27] and 103 [28] are constitutional on their face and may be used for their intended purpose, which may include disciplinary action.[29] Plaintiffs McNea and Nowakowski, in respect to Section 140 and 9.10–16, and Faragher, in respect to 103, have not demonstrated that Section 140, 9.10–16 or 103 were unconstitutionally applied.

IT IS SO ORDERED.

26. Plaintiffs McNea and Nowakowski do not have standing to attack Rules 47 and 75 on their face, see, *Standing, supra,* and they failed to show that the Rules were applied unconstitutionally to them. Therefore, actions, if any, which have already been commenced against McNea and Nowakowski *under Rules 47 and 75* may go forward. However, any new actions against these men may not be predicated upon Rules 47 and 75.

27. The record before the Court does not include any of the Civil Service Rules restricting political activity alluded to in 9.10–16. The Court does not pass on those Rules nor that 9.10–16, read to include those Rules, is constitutional. The Court's holding on 9.10–16 is limited to a finding that the plaintiffs failed to produce a sufficient record to establish the vagueness or overbreadth of 9.10–16.

28. Rule 103 lacks specific standards for when the Police Chief will allow visits to the Mayor's office or the Safety Director. This may be a constitutional defect, but no party in this action applied for permission to visit the Safety Director or Mayor's office, and therefore this issue is not adequately presented for adjudication.

29. This opinion does not pass on whether police officers violated any of the challenged regulations. Further, the Court finds Rule 38 standing alone is not unconstitutional in any way.