**Hartley HAINES, Plaintiff,**

v.

**Reubin O'D. ASKEW, Governor of the State of Florida, et al., Defendants.**

**No. 72–695 Civ. T–K.**

United States District Court,
M. D. Florida,
Tampa Division.

Dec. 11, 1973.

Richard H. Frank, Tampa, Fla., for plaintiff.

Charles E. Miner, Jr., Gen. Counsel, James T. Schoenbrod, Counsel, State of Fla. Bd. of Educ., Tallahassee, Fla., for defendants.

Robert Vossler, Tallahassee, Fla., for defendant Ingram.

Before RONEY, Circuit Judge, and KRENTZMAN and HODGES, District Judges.

KRENTZMAN, District Judge.

This 3-Judge Court matter presents the question whether Rule 6B–2.17, Department of Education Rules of Professional Practices Council of the State of Florida, unconstitutionally deprives plaintiff of his due process rights under the 14th Amendment to the Constitution. The statewide applicability of the challenged state administrative rule necessitated the convening of a 3-Judge Court under 28 U.S.C. § 2281. Mora v. Mejias, 206 F.2d 377 (1 Cir. 1953).

A 3-Judge Court was convened on February 9, 1973, and a hearing was held on defendant's motion to dismiss and plaintiff's motion for summary judgment on July 3, 1973. The 3-Judge Court took the matter under advisement and counsel were directed to file further memoranda on the legal issues presented. Said memoranda were subsequently filed. Upon consideration of the motions before the Court, the undersigned are of the opinion that, although jurisdiction is present, the case must be dismissed for failure to state a claim for relief. The challenged Rule is constitutional, and plaintiff is not entitled to the full panoply of due process rights at the hearing to be conducted under the Rule.

On November 6, 1972, plaintiff, a school teacher employed by the Sarasota County School Board, was served with a notice of hearing scheduled for November 29, 1972, "for the purpose of determining whether probable cause exists to believe you guilty of an act or acts justifying punitive action within the meaning of Section 231.28, et seq., and Section 231.36 et seq., Florida Statutes."

On November 27, 1972, plaintiff filed this complaint seeking injunctive and declaratory relief. Jurisdiction was claimed pursuant to 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. Immediately thereafter, a consent decree was entered enjoining the scheduled hearing.

## JURISDICTION

Defendants have challenged the jurisdiction of this 3-Judge Court, citing the recent case of City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). That case held that state agencies are not "persons" within the meaning of § 1983, whether legal or equitable remedies are sought against the agency.

Of the named defendants, all save one are members of the State Board of Education. One defendant, Mr. Ingram, is Administrator of the Professional Practices Council (hereinafter P.P.C.). Defendants contend that plaintiff is in effect attempting to sue state agencies pursuant to § 1983, and that the *Kenosha* case obviates such a result.

This Court need not decide whether the *Kenosha* case allows suits under § 1983 to be brought against named individuals who collectively constitute a state agency. Plaintiff also seeks relief

against the Administrator of the P.P.C. who, under any view of the case, is an individual amenable to suit under § 1983. The court thus finds that it has jurisdiction of the case at least insofar as regards Mr. Ingram. The Court must therefore consider plaintiff's contentions with regard to the constitutionality of Rule 6B–2.17.

### BACKGROUND

Florida Statutes, §§ 231.28 and 231.36, prescribe generally the procedure and circumstances whereby a teacher may be suspended or dismissed from employment. Section 231.57 creates a "Professional Practices Council" to be appointed by the State Board of Education, and sets out the general duties and responsibilities of the P.P.C.

The Department of Education has promulgated rules of statewide application pursuant to which the P.P.C. operates. Rule 6B–2.14 provides that the Council shall have jurisdiction over the discipline of educators in three specified areas, and sets forth the procedure whereby a complaint may be brought against an educator. Rule 6B–2.15 provides, *inter alia*, that "[H]earings to consider complaints of unethical, unprofessional, and incompetent practice shall be adversary in nature and shall be open to the public."

Rule 6B–2.17 provides for another type of hearing termed "a probable cause hearing." The Rule states:

"When the executive committee is uncertain as to whether the information submitted to it in any matter is sufficiently persuasive to support a finding of probable cause, an investigative hearing may be ordered for the purpose of determining probable cause.

. . . . . .

(2) The proceedings of such hearing shall be informal and shall not assume the character of an adversary proceeding. . . .

(3) The accused person may be required to testify and to produce evidence as any other witness and when so required he may be accompanied by counsel. The accused has no right to be present or to be heard during an investigation, but before any finding of probable cause is made the accused shall be advised in general terms the nature of the conduct which is being investigated, and he shall be given the opportunity to make a statement, personally or by counsel, verbally or in writing, sworn or unsworn, explaining, refuting, or admitting the alleged misconduct. The accused shall have no right to present other testimony or evidence, and he shall have no right of confrontation or cross-examination.

. . . . . .

(5) The transcript of the hearing and the findings of the hearing committee in written form shall be delivered to the executive committee for its consideration. Thereafter, the executive committee will make its decision on the matter and proceed to dismiss the matter, order an adversary hearing, or recommend probable cause to the Commissioner of Education."

Plaintiff, who has been ordered to appear at a probable cause hearing relating to his conduct as an educator, contends that the above regulation does not comport with basic requirements of due process in its failure to provide for a constitutionally adequate hearing. Plaintiff specifically objects to the denial of the rights to active counsel, apprisal, confrontation, and cross-examination.

### I. LIFE, LIBERTY, OR PROPERTY

■ Resolution of any due process challenge presents two questions for the court's consideration: 1) is a constitutionally protected right involved, i. e., life, liberty, or property; 2) if so, does the proceeding challenged comport with due process of law? Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■ Plaintiff is being called before the P.P.C. "for the purpose of determining whether probable cause exists to believe you guilty of an act or acts justify-

ing punitive action. . . . " Plaintiff is not being deprived of his life, nor is he being deprived of his property, since the probable cause hearing does not act to deprive plaintiff of his job in the school system. *Cf.* Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L. Ed.2d 570 (1972).

Plaintiff contends, however, that a liberty interest is at stake in the alleged unconstitutional hearing. Liberty is a privilege which is "essential to the orderly pursuit of happiness by free men." Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). There can be no doubt that "[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). The mere fact of being called to a probable cause hearing, much less the public character of that hearing itself, may easily act to dampen the reputation of an educator. *Cf. Roth.* For these reasons, it is apparent that a constitutionally protected right is involved in this matter.

## II. NATURE AND FUNCTION OF PROCEEDING

The requirements of due process are directly related to the type of proceeding involved. Courts have eschewed any absolute rules of procedure in applying the requisites of due process to the manifold variety of proceedings which exists in our bureaucratic society. The Supreme Court has stated:

" 'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. Thus, when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action

does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used. Therefore, as a generalization, it can be said that due process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings." Hannah v. Larche, 363 U. S. 420, 442, 80 S.Ct. 1502, 1514, 4 L. Ed.2d 1307 (1960).

Thus, in pursuit of the undefinable, the courts have drawn a broad distinction between "adjudicatory" hearings and "investigatory" hearings. This distinction is, of course, derived from the words of the Constitution itself, ". . . nor shall any State *deprive* any person . . . " (emphasis added). A violation of the due process clause depends upon a governmental "deprivation" in the Constitutional sense.

The purpose of an investigatory hearing "is to discover and procure evidence, not to prove a pending charge or complaint, but upon which to make one if, in the [agency's] judgment, the facts just discovered should justify doing so." Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 201, 66 S.Ct. 494, 501, 90 L.Ed. 614 (1946). In contrast, an adjudicatory hearing "tests such evidence upon a record in an adversary proceeding before an independent hearing examiner to determine whether it sustains whatever charges are based upon it." Genuine Parts Co. v. F.T.C., 445 F.2d 1382, 1388 (5 Cir. 1971).

Two Supreme Court cases set the parameters within which constitutional inquiry must proceed in this area, Hannah v. Larche, *supra* (hereinafter *Hannah*), and Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). In *Hannah* the Court had before it the procedures of the Civil Rights Commission. The Supreme Court held that investigatory hearings need not supply an individual with the

rights of apprisal, confrontation, and cross-examination.

■ *Hannah* provided a series of "factors" which should be applied in determining whether the Constitution requires that a particular right obtain in a specific proceeding. "The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account." *Id.* 363 U.S. at 442, 80 S.Ct. at 1515. The Court then found that the rights claimed, apprisal, confrontation, and cross-examination, were normally associated with adjudicatory proceedings.

Turning to the nature of the proceeding, the Court found that the Commission, in conducting hearings to investigate possible violations of the voting rights laws, was exercising its executive function of fact-finding, and was not adjudicating the rights of any individual. The Court likened such proceedings to grand jury investigations, presidential commissions, and Federal Trade Commission hearings. The Court said of the Commission:

> "It does not adjudicate. It does not hold trials or determine anyone's civil or criminal liability. It does not issue orders. Nor does it indict, punish, or impose any legal sanctions. It does not make determinations depriving anyone of his life, liberty, or property. In short, the Commission does not and cannot take any affirmative action which will affect an individual's legal rights. The only purpose of its existence is to find facts which may subsequently be used as the basis for legislative or executive action." *Hannah* at 441, 80 S.Ct. at 1514.

The Court rejected the argument that the Commission was in fact adjudicating the rights of individuals due to the adverse effect the hearings had on individuals called before it. This adverse effect arguably resulted from public opprobrium and scorn, and the possibility of criminal prosecution. The Court stated: ". . . [E]ven if such collateral consequences were to flow from the Commission's investigations, they would not be the result of any affirmative determinations made by the Commission, and they would not affect the legitimacy of the Commission's investigative function." *Id.* at 443, 80 S.Ct. at 1515.

The majority opinion of Justice Warren was joined in by three other justices. In a separate concurring opinion, Justice Frankfurter would have limited the holding of *Hannah*, and would have applied "adjudicatory" standards to any proceedings which duty it was to find that named individuals were responsible for violations of the law, or which served an accusatory function. In his view, the "investigatory" standards should only be applied, as they were with regard to the Civil Rights Commission, to investigations which are directed "to those concerns that are the normal impulse to legislation and the basis for it." *Hannah* at 488, 80 S.Ct. at 1543. Justice Frankfurter stated:

> "When official pronouncements on individuals purport to rest on evidence and investigation, it is right to demand that those so accused be given a full opportunity for their defense in such investigation, excepting, of course, grand jury investigations. The functions of that institution and its constitutional prerogatives are rooted in long centuries of Anglo-American history." *Id.* at 489–490, 80 S.Ct. at 1544.

Nine years after the *Hannah* decision, the Supreme Court was again faced with the distinction between adjudicatory and investigative hearings. The constitutionality of the Louisiana Labor-Management Commission of Inquiry was at issue in *Jenkins.* Justice Marshall, joined by two other justices, held that the Commission's hearings, although ostensibly investigatory in nature, were in fact used to find named individuals guilty of violating the criminal laws of Louisiana and to brand them as criminals in public. Relying on Frankfurter's concurring opinion in *Hannah*, the majority

opinion found that the Labor-Management Commission was exercising an accusatory function. The Court noted the grand jury exception to this "accusatory" classification, but left unclear the extent to which "accusatory" hearings need provide the full panoply of due process rights. Thus, although "reaffirming" the decision in *Hannah*, the *Jenkins* Court seemingly introduced a new category of hearings, i. e. "accusatory."

In dissenting, Justice Harlan was of the opinion that the distinction between investigatory and adjudicatory hearings should not be obfuscated. Since the Louisiana Commission was not the final arbiter of anyone's guilt or innocence, he stated that they should not be required to follow adjudicatory procedures. "Each, rather, plays only a *preliminary* role, designed, in the usual course of events, to initiate a subsequent formal proceeding in which the accused will enjoy the full panoply of procedural safeguards." *Jenkins* 395 U.S. at 439, 89 S. Ct. at 1858.

Plaintiff contends that *Jenkins* should control the facts in the instant case due to the "accusatory" nature of the probable cause hearings. A careful reading of *Jenkins*, however, discloses no neutral principles of constitutional law. The facts in that case were before the Supreme Court on a motion to dismiss the complaint. Emphasizing that the Court should therefore take the material allegations of the complaint as admitted, the Court found that the "investigatory" hearing was in fact a mere subterfuge for attempting to brand the plaintiff as a criminal in public. *Jenkins* at 421 & 427, 89 S.Ct. 1843. Justice Harlan stated in his dissent:

> "It may be that some of my Brethren understand the complaint to allege that in fact the Commission acts primarily as an agency of 'exposure,' rather than one which serves the ends required by the state statutes [investigatory purpose]. If so—although I do not believe that the complaint can be reasonably thus con-

strued—the area of disagreement between us may be small or nonexistent." *Jenkins* at 442, 89 S.Ct. at 1859.

If Jenkins is limited to its facts, then and only then, can its result appear harmonious with the *Hannah* case of a decade earlier.

Plaintiff has further contended that *Jenkins* effectively abolished the "collateral consequences" doctrine of *Hannah*. The *Jenkins* Court, however, quoted with approval the language in *Hannah* concerning the collateral consequences of the Civil Rights Commission's hearings. In *Jenkins*, however, the Court found that the Louisiana Commission differed in a substantial respect from the Civil Rights Commission, in that the Louisiana Commission "exercises a function very much akin to making an official adjudication of criminal culpability." *Jenkins* at 427, 89 S.Ct. at 1852.

 In spite of the confusion caused by the *Jenkins* analysis of "accusatory" bodies, the Court is of the opinion that civil accusatory hearings are not, per se, tantamount to adjudicatory hearings. In many cases, the Supreme Court has indicated that accusatory bodies may in fact be investigative forums, and has compared such investigative powers to grand jury proceedings. United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) (I.R.S. investigations); United States v. Morton Salt Co., 338 U.S. 632, 642–643, 70 S.Ct. 357, 94 L.Ed. 401 (1950) F.T.C. proceedings); Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 201, 66 S.Ct. 494, 90 L.Ed. 614 (1946) (Wage and Hour Administration investigation).

Turning to the facts in the instant case, the stated purpose of "probable cause" hearings conducted by the P.P.C. are set out in Rule 6B–2.17:

> "When the executive committee is uncertain as to whether the information submitted to it in any matter is sufficiently persuasive to support a finding of probable cause, an investigative hearing may be ordered for the purpose of determining probable cause."

This provision of the Rule, indeed the entire Rule 6B–2.17, is taken from the Integration Rule of the Florida Bar, Rule 11.04, 32 F.S.A., regulating the procedures of grievance committees in the Florida Bar. In that respect, the challenged rule is similar to the procedures sustained in Anonymous v. Baker, 360 U.S. 287, 79 S.Ct. 1157, 3 L.Ed.2d 1234 (1959). In *Baker,* the Supreme Court upheld the denial of the active participation of counsel in proceedings of a New York State judicial inquiry into alleged improper practices at the local bar. The Court found that the proceedings were investigatory in nature, and that the right to counsel did not extend to the investigative stages of such civil proceedings.

There is, however, one important distinction between the procedures of grievance committees and the challenged "probable cause" hearings. Although the Department of Education has "copied" the procedures of the Florida Bar, it has left out one important provision of those rules, the secrecy of the proceedings. Rule 11.12, 32 F.S.A. As Justice Cardozo once stated with regard to proceedings against learned professionals:

> "Reputation in such a calling is a plant of tender growth, and its bloom, once lost, is not easily restored. The mere summons to appear at such a hearing and make report as to one's conduct may become a slur and a reproach. The remedy is to make the inquisition a secret one in its preliminary stages." People ex rel. Karlin v. Culkin, 248 N.Y. 465, 478, 162 N.E. 487, 492 (1928).

The "probable cause" hearings conducted before the P.P.C. are open to the public. This, of course, is somewhat inconsistent with the provisions of Rule 6B–2.17 that the accused has no right to be present. As was brought out at the hearing before this Court, the accused could seemingly be present as a member of the audience.

■ The public nature of the hearings is, however, not fatal to the constitutionality of the Rule. The publicity involved in such hearings is, like the possible results stemming from the public nature of the Civil Rights Commission hearings in *Hannah,* a "collateral consequence" of the probable cause hearing. Any adverse result of the hearing on plaintiff's reputation "would not be the result of any affirmative determinations made by the [P.P.C], and they would not affect the legitimacy of the [committee's] investigative function." *Hannah* 363 U.S. at 443, 80 S.Ct. at 1515. There is, per se, no constitutional right that investigations be conducted in secrecy.

■ This Court does not sit as final arbiter of the widom of administrative procedures unless deficiencies rise to constitutional proportion. There is some wisdom in the requirement that grievance committee meetings be held in secret. Rather than serve to convert such hearings into a Spanish Inquisition, the cloak of secrecy prevents unwarranted and unsubstantiated charges from seeing the light of day. Be that as it may, it is not for this Court to strike down the challenged rule unless a constitutional deficiency exists.

The rights claimed by plaintiff at the probable cause hearings, active counsel, apprisal, confrontation and cross-examination, are those rights associated with adjudicatory hearings, and are the same rights which *Hannah* and *Baker* held were not necessary in investigatory hearings. The presence of such rights at investigatory hearings would turn such hearings into trial-like proceedings.

■ The Court concludes that the probable cause hearings before the P.P. C. conducted under Rule 6B–2.17 are investigatory proceedings, consistent with the stated purpose of such hearings set out in the Rule. A probable cause hearing is not called unless there are insufficient facts upon which to proceed to an adversary hearing before the P.P.C. under Rule 6B–2.15. There is no determination made by the P.P.C. at the probable cause hearings which is in the nature of an adjudication affecting

legal rights. Any determinations made are factual and in the nature of recommendations to the executive committee of the Council and to the Commissioner of Education. These recommendations are not binding. *Cf.* Fitzgerald v. Hampton, 152 U.S.App.D.C. 1, 467 F.2d 755, 766 (1972) (binding recommendations of the Civil Service Commission).

There is no allegation in plaintiff's complaint that the probable cause hearing will serve as an agency of exposure. Indeed, there is nothing in this case to suggest that these hearings are anything but bona fide investigative proceedings. Thus, unlike the alleged facts before the *Jenkins* Court, the probable cause hearings are not a pretext, veiling a malevolent purpose of individual exposure to public ridicule.

In further support of this court's holding that the P.P.C. probable cause hearings need not provide the rights claimed by plaintiff, the Court has considered the possible burden on those proceedings were the claimed rights to obtain at the hearings. If the rights to active counsel, apprisal, confrontation, and cross-examination were available at probable cause hearings held under Rule 6B–2.17, the proceedings would become a trial of facts, seriously decreasing the investigatory function of the hearings. If it were adversary in nature, the probable cause hearing would amount to a trial of the accused, with the result being a "guilty" or "not guilty" verdict. Indeed, there would be no purpose served by such a hearing, other than to impose upon the plaintiff an additional adversary hearing. In the words of Justice Warren in *Hannah*:

> "[T]he investigative process could be completely disrupted if investigative hearings were transformed into trial-like proceedings. . . . Fact finding agencies without any power to adjudicate would be diverted from their legitimate duties and would be plagued by the injection of collateral issues that would make the investigation interminable. . . . This type of proceeding would make a

shambles of the investigation and stifle the agency in its gathering of facts." *Hannah* 363 U.S. at 443–444, 80 S.Ct. at 1515.

It must be emphasized that even if the probable cause hearing committee concludes that probable cause exists to take punitive action against an educator, the decision is made by another to either order an adversary hearing or dismiss the matter. At any further hearing, the hearing committee would, and must, provide the accused with the basic rights of counsel, apprisal, confrontation, and cross-examination.

For the foregoing reasons, the undersigned are of the opinion that the procedures set out for probable cause hearings conducted under Rule 6B–2.17 are constitutional and do not deprive plaintiff of due process under the 14th Amendment.