Donald L. Tucker Speaker House of Representatives
William J. Rish Chairman Select Committee on Impeachment Tallahassee
QUESTIONS:
1. Do constitutional concepts of due process and fundamental fairness require that the House of Representatives provide counsel to an officer subject to impeachment, who has been determined to be indigent, in proceedings before or in matters directly related to proceedings before a committee on impeachment or until the conclusion of proceedings against such officer by the committee or by the House of Representatives?
2. If the answer to question 1 is in the affirmative, may the House of Representatives contract with a state agency charged with the responsibility of representing indigent defendants in criminal cases to provide counsel to an officer subject to impeachment, who has been determined to be indigent, in proceedings before or in matters directly related to proceedings before a committee on impeachment or until the conclusion of proceedings against such officer by the committee or by the House of Representatives, and will such representation be adequate to fulfill the requirements of due process and fundamental fairness?
3. If the answer to question 1 is in the affirmative, is there any basis precluding recovery, by civil suit or otherwise, of expenses incurred by the House of Representatives in providing counsel to an officer subject to impeachment, who has been determined to be indigent, in proceedings before or in matters directly related to proceedings before a committee on impeachment or until conclusion of proceedings against such officer by the committee or by the House of Representatives, in the event such officer loses his indigency status at a later date?
4. If the answer to question 1 is in the affirmative, may the House of Representatives contract with an officer subject to impeachment, who has been determined to be indigent, for repayment of expenses incurred by the House of Representatives in providing counsel for such officer in proceedings before or in matters diectly related to proceedings before the committee on impeachment or until conclusion of proceedings against such officer by the committee or by the House of Representatives, in the event such officer loses his indigency status at a later date?
5. If the answer to question 1 is in the negative, does the House of Representatives run the risk of inadvertently granting immunity to an officer subject to impeachment, who may also be the subject of state criminal prosecution, by compelling his attendance by subpoena or by compelling the production of books, papers, or other documents by subpoena duces tecum in the absence of appointed counsel?
SUMMARY:
An indigent officer under impeachment investigation by the House of Representatives is not required to be provided with counsel, or to be reimbursed for attorney's fees, under existing standards of due process as enunciated by the United States Supreme Court. The right to be represented by counsel is distinguishable from the right of an indigent to have counsel provided at government expense. A legislative impeachment committee is not empowered by statute to grant immunity from criminal prosecution and, in the absence of such power, cannot compel testimony or production of documents in the face of an objection grounded on self-incrimination.
AS TO QUESTION 1:
I would note first that I have found nothing in the Florida Constitution or Florida Statutes expressly requiring or authorizing the expenditure of state funds to provide counsel to an officer under impeachment investigation by the House of Representatives. (Cf. s. 112.44, F. S., permitting the Senate — in a removal proceeding following suspension of an officer by the Governor — to pay the officer's reasonable attorney's fees and costs `upon his exoneration.') I also have found no decisions from Florida or other jurisdictions involving the right to provided counsel in the context of an impeachment proceeding.
You indicated in your letter your understanding that the officer in question `is not entitled to counsel under the Sixth Amendment to the United States Constitution [as applied to the States through the Fourteenth Amendment] or under Article I, Section 16
of the Constitution of the State of Florida,' since these provisions apply to criminal prosecutions and proceedings. You further stated that `it is not clear whether counsel may be required in accordance with evolving concepts of due process and fundamental fairness' [under the Fourteenth Amendment to the United States Constitution and s. 9, Art. I of the Florida Constitution]. My research has disclosed no such requirement under existing or `evolving' due process concepts as enunciated by the United States Supreme Court. Your first question is, therefore, answered in the negative.
The only factor which clearly and consistently invokes the requirement that counsel be provided to an indigent at government expense is the threat of deprivation of liberty. Even in criminal proceedings, it is only where incarceration (or death) is threatened that counsel must be provided at each critical stage. Argersinger v. Hamlin, 407 U.S. 25 (1972); Gideon v. Wainwright,372 U.S. 335 (1963). In criminal prosecutions punishable only by fine (deprivation of property, rather than liberty) there is presently no requirement that counsel be provided. The threat of deprivation of liberty is also the basis for imposition of the right to have counsel provided in juvenile delinquency proceedings; Re Gault, 387 U.S. 1 (1967); juvenile dependency proceedings, Davis v. Page, 442 F. Supp. 258 (S.D.Fla. 1977); and various commitment proceedings (e.g., as a mentally disordered sex offender), Specht v. Patterson, 386 U.S. 605 (1967). In Woodham v. Williams, 207 So.2d 320, 322 (1 D.C.A. Fla., 1968), the court found no requirement that counsel be provided to one threatened with revocation of an insurance license, emphasizing that `[a] proceeding to revoke a license . . . is strictly civil in nature, and does not involve the loss of liberty or threat ofincarceration in the common jail.' (Emphasis supplied.)
However, even the threat of incarceration is, in certain instances, insufficient to require that counsel be provided. As to parole revocation proceedings, the United States Supreme Court at present does not recognize an unequivocal right to have counsel provided, even though revocation results in incarceration. The question of whether counsel must be provided to a parolee is now determined on a case-by-case basis, based on consideration of whether adequate due process can be provided without representation by counsel. For example, in Gagnon v. Scarpelli,36 L.Ed.2d 656, 664 (1973), the court noted that an
 unskilled or uneducated probationer or parolee may well have difficulty in presenting his version of a disputed set of facts where the presentation requires the examining or cross-examination of witnesses or the offering or dissecting of complex documentary evidence. (Emphasis supplied.)
There has been no suggestion that the officer presently under investigation is either `unskilled' or `uneducated,' and I am unaware of any point in the impeachment proceedings of either the full House of Representatives or its impeachment committee at which the officer under investigation would have any right or opportunity to examine or cross-examine witnesses. In Gagnon,supra, at 665, the court also recognized (and balanced against the parolee's right to due process of law) the state's `significant interests in informality, flexibility, and economy' in its proceedings. (Emphasis supplied.)
I am aware of no line of cases requiring appointment of counsel where only deprivation of property — and not liberty — is threatened. As noted above, even in actual criminal proceedings, there is presently no requirement that counsel as provided where incarceration is not threatened (i.e., where the threat is only of deprivation of property by the imposition of a fine). Argersinger v. Hamlin, supra. And, even were it established that counsel must be provided where only deprivation of property is threatened, I would point out that impeachment by the House of Representatives does not impose any fine or forfeiture or, in my opinion, otherwise deprive the officer of property.
The direct consequences of impeachment are as provided (and only
as provided) in s. 17, Art. III, State Const. That section provides that impeachment by the House, if accompanied byconviction by the Senate, results in removal of the officer from the office held, and if the Senate chooses to exercise the discretion granted by s. 17(c), Art. III, State Const., `disqualification to hold any office of honor, trust or profit.' However, even these direct constitutional consequences of impeachment do not inure because of the actions of either the House committee investigating impeachment or of the full House of Representatives. The only change in an officer's status resulting from impeachment by the House is that, pursuant to s. 17(b), Art. III, State Const., the impeached officer `shall be disqualified from performing any official duties until acquitted by the senate. . . .' [However, even that temporary consequence of impeachment is inapplicable to the officer now under investigation, as he has already been suspended from office without compensation by order of the Florida Supreme Court, upon the recommendation of the Judicial Qualifications Commission, following his conviction in Federal District Court of criminal conspiracy charges.] Any consequence of impeachment by the House (or, for that matter, of conviction by the Senate), other than those provided in the Constitution (such as forfeiture of retirement benefits as provided in s. 121.091(5)(g), F. S.) would be the result of the operation of the particular statute involved, and any challenge to such a consequence imposed by statute and conditioned on impeachment by the House and conviction by the Senate would properly be concerned only with the adequacy of the due process provided by the statutory scheme, not with the constitutional impeachment proceedings which constitute the event on which operation of the statute is conditioned or predicated.
Also pertinent is a consideration of the nature of the House proceedings. If the impeachment process set forth in s. 17, Art. III were compared with a criminal proceeding in the courts, it could be said that the role of the House of Representatives is to conduct an investigation (such an investigation may be by the full House or by a committee appointed for that purpose) to determine if probable cause exists that an officer has committed a `misdemeanor in office,' and, upon a finding of probable cause, to bring formal charges against the officer (in much the same manner as a grand jury functions in the criminal justice system). And, it is expressly provided in s. 17(a), Art. III, State Const., that the role of an impeachment committee is to `investigate charges against any officer subject to impeachment.' (Emphasis supplied.)
That the role of the House (and especially that of a House impeachment committee) is of a preliminary and investigative
nature further reinforces my negative answer to your first question. It is my understanding that the only stage during House proceedings at which the officer under investigation might participate would be during the hearings conducted by the impeachment committee (should such a committee be formed — it is not a prerequisite to action by the full House). It is also my understanding that only House members participate in the impeachment deliberations of the full House of Representatives. Thus, it appears that the only point at which the issue of representation by counsel (whether provided by the officer or the state) would arise during the proceedings of the House of Representatives is during the impeachment committee hearings, should the officer appear in response to invitation or subpoena of the committee. Since the only point at which the officer might participate — if at all — in the House proceedings is before an impeachment committee, and since the committee proceedings are (as expressly provided in s. 17(a), Art. III, supra) investigatory, it may be that the officer would not have even the right to assistance or appearance of counsel (much less assistance or appearance of counsel provided at government expense) in light of Haines v. Askew, 368 F. Supp. 369 (M.D.Fla. 1973), aff'd417 U.S. 901 (1974). In that case, the United States Supreme Court affirmed the district court's ruling that denial of participation by counsel during an investigative hearing to determine probable cause that a public school teacher had committed acts justifying imposition of disciplinary action (including suspension and dismissal) did not deprive the teacher of due process. The court emphasized that the [civil] proceedings were preliminary and investigative — not adjudicatory. The court stated, at 376-377:
 The Court concludes that the probable cause hearings before the P.P.C. [Professional Practices Council] . . . are investigatory proceedings, consistent with the stated purpose of such hearings set out in the Rule. A probable cause hearing is not called unless there are insufficient facts upon which to proceed to an adversary hearing before the P.P.C. under Rule 6B-2.15. There is no determination made by the P.P.C. at the probable cause hearings which is in the nature of an adjudication affecting legal rights. Any determinations made are factual and in the nature of recommendations to the executive committee of the Council and to the Commissioner of Education. These recommendations are not binding. (Emphasis supplied.)
The nature of the proceedings described above appears to be closely analogous to that of the impeachment proceedings of the House of Representatives and particularly that of the impeachment committee proceedings.
The role of the House in impeachment proceedings may also be directly analogized to that of the Governor in the exercise of his power of suspension of officers under s. 7, Art. IV, State Const. In fact, it can be stated that the power of impeachment vested in the House of Representatives by s. 17, Art. III constitutes an exception to the suspension powers of the Governor, the latter procedure being the primary and more widely applicable constitutional procedure for removal of officers. I am aware of no point during the process leading to suspension of an officer by the Governor, including the investigation customarily conducted by the Governor, at which any presently enunciated interpretation of due process would require that the officer — if indigent — be provided counsel at government expense, whether such counsel's role would be to represent the officer at any meeting or hearing which the Governor might choose to hold, or to represent the officer in any proceeding which the officer might wish to institute in the courts relating to the investigation or suspension. I have been advised that the Governor's office takes this view and that counsel has not been and would not be provided at government expense to an officer whose suspension is being considered by the Governor.
It should finally be emphasized that there is a clear distinction between the right to assistance or appearance of counsel and the right to have counsel provided at government expense. The existence of a right to representation by counsel (of one's own choosing) in a particular context — even where expressly authorized by statute (in this case, by Rule 6.16 of the Rules of the House of Representatives) — does not carry with it a corresponding requirement that counsel be provided at government expense to an indigent in the same context. The distinction between the right to representation by counsel and the right to have counsel provided has been recognized by the courts in various contexts. In Paul v. United States Immigration and Nat. Serv., 521 F.2d 194, 197 (5th Cir. 1975), the court stated that, in a deportation proceeding in which the potential consequences are admittedly severe, `[a]liens have a statutory right to the presence of counsel, but not atgovernment expense.' (Emphasis supplied.) The courts have also rejected claims of a right to government-provided counsel in the face of statutes granting the right to representation by counsel in hearings on denial of disability benefits under the Social Security Act, Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971), and statutes authorizing representation by counsel in parole revocation proceedings, Wainwright v. Cottle, 414 U.S. 895 (1973),reh. den., 414 U.S. 1086 (1973).
AS TO QUESTIONS 2, 3, and 4:
As your first question has been answered in the negative, your second, third, and fourth questions need not be addressed.
AS TO QUESTION 5: This question may be answered by reference to AGO's 073-150 and 075-219, construing s. 914.04, F.S., which constitutes the statutory authority by which immunity from state criminal prosecution may be granted. Section 914.04 provides:
 No person, having been duly served with a subpoena or subpoena duces tecum, shall be excused from attending and testifying or producing any book, paper or other document before any court having felony trial jurisdiction, grand jury, or State Attorney, upon investigation, proceeding, or trial for a violation of any of the criminal statutes of this state upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to convict him of a crime or to subject him to a penalty or forfeiture, but no person shall be prosecuted or subjected to any penalty or forfeiture for or an account of any transaction, matter, or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation or proceeding. (Emphasis supplied.)
In AGO 073-150, I concluded that, under the above statute, `only the state, acting through its prosecuting attorney, can immunize a witness under said statute.' In AGO 075-219, I considered the question of whether a legislative committee could grant immunity from criminal prosecution. I concluded in AGO 075-219, and here reiterate, that
 [a]n examination of Florida Statutes fails to disclose any statute authorizing a legislative committee to grant immunity from prosecution to a witness appearing before it, and in the absence of such a statute, no legal power to grant immunity exists. (Emphasis supplied.)
In accord is AGO 060-168, construing former s. 932.29, F. S., the predecessor of current s. 914.04, F. S. As to your suggestion that immunity might `inadvertently' be granted, I would emphasize that, since it is clear that a legislative committee is not empowered to grant immunity from criminal prosecution, any objection to testifying or producing documents interposed by the officer, grounded on a claim of self-incrimination, must be respected. See
Kastigar v. United States, 406 U.S. 441 (1972).
Prepared by: Jerald S. Price, Assistant Attorney General