Johnsie Washington WILSON, Jr. and Greensboro Police Benevolent Association, Inc., Plaintiffs,

v.

William E. SWING, Chief of Police, Greensboro, North Carolina, Defendant.

No. C–76–227–G.

United States District Court, M. D. North Carolina, Greensboro Division.

Dec. 20, 1978.

John F. Comer and Robert S. Cahoon, Greensboro, N. C., for plaintiffs.

Charles E. Nichols, R. Thompson Wright, and James J. Coman, Greensboro, N. C., for defendant.

## MEMORANDUM ORDER

GORDON, Chief Judge.

Plaintiffs initiated this action seeking compensatory and punitive damages, back-pay, reinstatement and injunctive relief. They allege jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1343(3) and (4) and 1331(a). Presently before the Court for disposition is the defendant's motion for summary judgment on all issues raised in the complaint. In the complaint the following are alleged: violation of Wilson's Fifth and Fourteenth Amendment right against self-incrimination; invalid waiver of the right to a departmental hearing; denial of the right to counsel under the Sixth and Fourteenth Amendments and Departmental rules; violation of freedom of associational rights under the First and Fourteenth

Amendments; discriminatory enforcement of Rule 410.67 against Wilson; and denial of Wilson's Fourteenth Amendment due process right to property. Defendant addressed other issues in his briefs, but the Court does not construe the complaint as containing them. For the reasons that follow, the Court concludes that the motion should be granted in part and denied in part.

### Background

The individual plaintiff here is Johnsie Wilson, a Greensboro resident who, for all but a brief period in 1963 and 1964, since 1962 has been a police officer in the Greensboro Police Department. In March of 1970 he was promoted to the rank of Sergeant, which rank he held until October of 1975 when he was demoted, among other things, for violating three of the Department's rules and regulations. (Those regulations are included in an Appendix to this Memorandum and are made a part hereof.) Also a plaintiff is the Greensboro Police Benevolent Association, Inc. (GPBA), a professional organization existing under the laws of the State of North Carolina, whose membership consists entirely of members of the Greensboro Police Department. GPBA alleges that its membership is subject to the same rules and regulations as the individual plaintiff and seeks to prosecute the action on behalf of its members and all persons similarly situated. There is no allegation that Wilson is a member of the GPBA.

The complaint alleges that on September 4, 1975, Wilson was ordered to appear before the Internal Affairs Division (IAD) of the Greensboro Police Department. He was informed by the Commanding Officer of the IAD, Lt. D. C. Williams, that he had been accused of having an extra-marital affair with another Greensboro police officer while off duty, in violation of Department Rule 410.67. Defendant disputes the allegation that Wilson was not told that any statements he might make could not be the subject of any later criminal proceeding, but the parties agree that Wilson was ordered to respond to the charges. Upon

his refusal, plaintiff alleges that Williams told him that his failure to reply was insubordination, which refusal could result in Wilson's immediate suspension or dismissal. It is alleged that plaintiff then denied the charges and Williams stated that the failure to be truthful would carry the same sanctions. Plaintiff repeated his denial.

Wilson subsequently waived his right to a full departmental hearing on his case and appeared before the defendant on October 1, 1975, for disciplinary action. Wilson alleges that he requested and was denied the presence of counsel at the outset of the meeting; and that when he denied certain portions of the charges, he was admonished about his duty to be truthful and was threatened with further charges if he persisted in his denials. Plaintiff claims that such threats and admonitions caused him to forego offering further defense and showing mitigating circumstances.

At the conclusion of the meeting the defendant decided that Wilson should be disciplined for violating three of the Department's Rules and Regulations: Chapter IV, Sections 410.03 (Standard and Conduct), 410.67 (Immoral and Indecent Conduct), and 490.66 (Truthfulness).

The complaint, inter alia, challenges Sections 490.66 and 410.03 in their entirety, and that part of Section 410.67 which prohibits members of the Department from engaging in "immoral and indecent conduct."

### Standing

In his July 26, 1977, Findings and Recommendation, the federal magistrate recommended that the defendant's motion to dismiss GPBA for lack of standing should be granted. The magistrate reasoned that the suit has not been declared a class action; that there is no allegation that any of GPBA's members are adversely affected by the disciplinary action taken against Wilson; and that if Wilson's suit is successful, GPBA will receive all the relief that it asks.

As a general rule a party only has standing to attack the constitutionality of rules and regulations that have affected his

or her interests. Here the complaint attacks Rules 410.03 and 410.67 on three grounds: that they are vague, that they are overbroad as applied, and that they are facially overbroad. Under *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), a party against whom a rule may constitutionally be applied cannot raise a *facial* overbreadth challenge, unless the party bases that challenge on alleged infringement of First Amendment rights. This exception is rationalized not by the fact that the litigant before the Court may have suffered a deprivation of a First Amendment right, but by "a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick, supra* at 612, 93 S.Ct. at 2916. The rationalization does not apply to situations such as the present, where in addition to the party against whom the challenged rule has been applied, i. e. Wilson, there is an alternative litigant such as GPBA who is raising a facial overbreadth argument and against whom the rule or statute has *not* been applied. *McNea v. Garey,* 434 F.Supp. 95, 104 (N.D.Ohio 1976). Whether to dismiss GPBA and allow Wilson to raise a facial overbreadth attack on Rules 410.03 and 410.67 depends on whether GPBA has standing to make that attack.

■ Organizations similar to GPBA have been granted standing to raise facial overbreadth challenges to protect their members' First Amendment rights. See, e. g., *United Transportation Union v. State Bar of Michigan,* 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971); *McNea v. Garey, supra.* Such organizations stand in the same relationship to their members as GPBA does to its members. The Court, therefore, concludes that GPBA has standing to raise a facial overbreadth challenge against Rules 410.03 and 410.67. For the same reason, although Wilson has standing to challenge the above rules on vagueness grounds, so, too, does GPBA. It does not have standing to challenge Rule 490.66 or join in Wilson's other alleged causes of action because the above policy is not operative outside the

First Amendment context. Accordingly, the Court must disagree with the Magistrate's recommendation and deny defendant's motion to dismiss GPBA for lack of standing. The result of this holding is to deny Wilson the right to raise a facial overbreadth challenge against 410.03 and 410.67. He may properly raise the other arguments that have been put forward in the complaint.

### Legal Standard

■ On a motion for summary judgment, a court should grant the motion if and only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. This is doubly true where federal constitutional claims are at stake. *Sindermann v. Perry,* 430 F.2d 939, 943 (5th Cir. 1970), *aff'd,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

### Self-Incrimination Claim

■ The parties agree that adulterous behavior is proscribed by N.C.Gen.Stat. § 14–184 (1969). Wilson argues that his right to be free from self-incrimination under the Fifth and Fourteenth Amendments was violated when he was coerced by Lt. Williams into denying complicity in the alleged extramarital affair with which he was charged. He complains that the requirement of truthfulness under 490.66, coupled with the alleged failure of Lt. Williams to advise him that any statement he made would not subject him to subsequent criminal prosecution, forced him to deny the charges. By later waiving the departmental hearing, he admitted the charges were true.

■ Although the investigation by the IAD was civil in nature, a person's right to be free from self-incrimination attaches whenever "the testimony [sought] *might* later subject the witness to criminal prosecution . . . ." *Lefkowitz v. Cunningham,* 431 U.S. 801, 805, 97 S.Ct. 2132, 2136, 53 L.Ed.2d 1 (1977) (emphasis added). Furthermore, under *Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082

(1968), no disciplinary action may be taken against an officer for the failure to deny or admit the truth of accusations unless he is first told that any such testimony cannot be the basis for any subsequent criminal prosecution. *Lefkowitz, supra,* at 814 n. 12, 97 S.Ct. 2132 (Stevens, J., dissenting). These decisions do not, however, stand for the proposition that the right against self-incrimination protects one who has lied to avoid incriminating himself. *U.S. v. Devitt,* 499 F.2d 135, 142 (7th Cir. 1974), *cert. denied,* 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975).

Therefore, even assuming the truth of plaintiff's allegations, i. e. that he was not told by Lt. Williams that any statement he might make would not be used as the basis for any subsequent criminal action against him, plaintiff's Fifth Amendment argument must fail as a matter of law. Defendant's motion for summary judgment on this claim should be granted.

### Validity of Waiver of Right to Departmental Hearing

■ On Friday, September 26, 1975, Wilson was served with a formal specification of charges and notice of his right to hearing on the matter. Wilson requested from Lt. Williams, the officer who served him, the right to use the weekend to determine his response. He stated that he wished to confer with his wife and his attorney. Williams granted that request. The following Monday, September 29, 1975, Wilson came to the police station. Williams read a waiver of hearing form to him, the plaintiff read the form, and the plaintiff signed it. The affidavits of Williams and the defendant show that on October 1 of that year the plaintiff was asked by the defendant if he understood his right to have a full departmental hearing, to which the plaintiff responded in the affirmative. The defendant's argument that the stress felt by the plaintiff was in no way abnormal has not been refuted by the plaintiff in a manner sufficient under F.R.Civ.P. 56(e) to create a genuine issue of material fact. Since Wilson was given adequate time within which to confer with counsel, which he subsequently did, the Court can only conclude as a matter of law that the waiver performed by the plaintiff under the facts as described above was knowingly, voluntarily and intelligently done. Summary judgment for the defendant on this issue should be granted.

### Right to Counsel Claim

The plaintiff has admitted that the validity of the waiver of his right to a departmental hearing is dispositive of the waiver of his right to counsel at the hearing. Since the Court has decided the waiver of the right to a departmental hearing was appropriately done, it necessarily follows that plaintiff's waiver of the right to counsel at the hearing occurred in the same manner, i. e., knowingly, intelligently and voluntarily.

The plaintiff asserts that he did not waive his right to counsel at the IAD interview. He bases such a right to counsel at the interview on three theories. First, plaintiff argues that when he refused to deny the charges as presented to him by Lt. Williams, Williams told him that he could not leave the office to get an attorney, that he had no right to one, and that he was required under Rule 490.66 to respond. As a result, plaintiff contends, his right to counsel under the Sixth Amendment attached as the interview took on the qualities of an "in-custody" interrogation.

■ Under *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), where a criminal investigation has begun to focus on a particular suspect, the suspect is taken into custody and the suspect requests assistance of counsel, that person's Sixth Amendment right to counsel attaches. There is some dispute as to when in the course of the interview Wilson made clear his desire to confer with counsel, but regardless of when he did so, no Sixth Amendment right to counsel attached at any time during the interview. It did not attach because the right does not extend to civil proceedings. *Boulware v. Battaglia,* 344 F.Supp. 889, 903 (3rd Cir. 1973). The sworn affidavits of the

defendant and Lt. Williams establish that the IAD interview was purely civil in nature. Accordingly, the Sixth Amendment claim of the plaintiff fails as a matter of law.

Plaintiff alternatively contends that the due process clause of the Fourteenth Amendment gave him a right to counsel at the IAD interview. Due process does not mandate a single, required set of procedures for all occasions. *Hanna v. Larche*, 363 U.S. 420, 440, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). Rather, to decide what is required by due process, it is necessary for the Court to consider the specific factual context and the type of proceeding involved. The IAD interview is investigatory in nature; no possibility of sanctions exists at that point; IAD can only recommend to the Chief of Police that a General Board of Inquiry be convened for a departmental hearing, which recommendation is not binding on him; and an accused officer is afforded a full range of procedural rights at any subsequent departmental, adjudicatory hearing. Furthermore, the presence of counsel at the IAD interview could seriously disrupt its investigation and turn it into a trial-like proceeding. The Court concludes as a matter of law that the due process clause of the Fourteenth Amendment provides no right to counsel at the IAD interview. *Accord, Haines v. Askew*, 368 F.Supp. 369 (M.D.Fla.1973), *aff'd without opinion*, 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974).

Plaintiff finally points to the Department's Rules and Regulations to support his right to counsel claim. With his brief opposing the present motion, plaintiff has submitted an undated copy of what he claims were the rules and regulations in effect throughout the fall of 1975. Section 540.00 of plaintiff's copy, however, grants an accused department member the right to counsel at any departmental hearing, but at no other time. As a matter of law, therefore, no right to counsel at the IAD interview can be found in the regulations alleged by plaintiff to have been in effect during the fall of 1975. Nor can such right, as a matter of law, be found in the rules and regulations as defendant alleges them to have read at that time.

For the foregoing reasons, the Court concludes as a matter of law that Wilson had no right to counsel at the IAD interview.

The complaint also asserts a right to counsel at the meeting with the defendant for disciplinary action on October 1, 1975. Under the Sixth Amendment plaintiff had no such right as a matter of law because the proceeding was purely civil in nature, just like the IAD interview. The defendant has submitted a copy of the rules and regulations allegedly in effect at the time of the plaintiff's disciplinary action. The plaintiff has not controverted that part of the defendant's copy which asserts that the final determination of guilt or innocence and the subsequent disciplinary action taken after a departmental hearing shall rest with the Chief of Police. General Order 69–2, Subsection IV(B)(7)(b) (effective 8/15/71). In that regard the proceeding before the Chief of Police is significantly different from the IAD interview. In the proceeding before the Chief an actual determination of guilt or innocence and the decision as to what, if any action should be taken, is made. As a result, plaintiff's due process right to counsel argument in this context is much stronger than in the IAD context. However, the Court need not decide whether due process mandates such a right. For, even assuming such a right exists at that stage of the disciplinary procedure, the facts of the present case indicate that the plaintiff waived any such right. The sworn affidavits of the defendant and Lt. Williams establish that at the same time that the plaintiff was advised of his right to a departmental hearing and to the presence of counsel at such hearing, he was advised of a right to have counsel at the proceeding before the Chief. They also establish that the plaintiff waived that right in a knowing, intelligent and voluntary manner. The only contention to the contrary is contained in the unsworn and unverified complaint, which does not suffice to raise a genuine issue of material fact as

required by F.R.Civ.P. 56(e). As a matter of law, even assuming a Fourteenth Amendment due process right to counsel at the proceeding before the Chief, the Court concludes that the plaintiff waived any such right knowingly, intelligently and voluntarily. Nor do the regulations that plaintiff alleges were in effect at the time of the proceeding before the defendant provide for the right to counsel at that proceeding.

For the foregoing reasons, the Court concludes that as a matter of law the plaintiff had no right to counsel at the IAD interview; that any right of plaintiff to counsel at the departmental hearing was waived knowingly, voluntarily and intelligently; and that assuming without deciding such a right existed at the October 1, 1975, proceeding before the defendant, the plaintiff waived that right knowingly, voluntarily and intelligently. Summary judgment for the defendant on these claims is proper.

### Freedom of Association Claims

Wilson has standing to challenge Rules 410.03 and 410.67 on grounds of vagueness and overbreadth as applied to his conduct. GPBA has standing to raise vagueness and facial overbreadth arguments. The Court will address the overbreadth claims first.

#### (a) Facial Overbreadth

#### (1) Rule 410.03

■ Rule 410.03 states that "[m]embers and employees shall conduct their private and professional lives in such a manner as to avoid bringing the Department into disrepute." To prevail on a facial overbreadth claim, a party must establish initially that the language of the challenged rule or statute, as it is written, punishes speech or conduct protected by the First and Fourteenth Amendments. The challenger must also establish one of the following: that the alleged governmental interests in restricting the speech or conduct are insufficient to justify the restriction; or even if the interests are sufficient, that narrow enough means, consistent with the furtherance of those interests, are not employed. *McNea v. Garey, supra* at 107–08.

The Supreme Court has stated recently that "[f]acial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute," *Broadrick v. Oklahoma,* 413 U.S. at 613, 93 S.Ct. at 2916; and that "particularly where conduct and not merely speech is involved, . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.* at 615, 93 S.Ct. at 2918. Unlike the record in *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), there are no limiting interpretations of Rule 410.03 in the record as it now stands. Furthermore, there most likely is constitutionally protected associational conduct in which members of the Police Department could engage in their private and professional lives, and which would bring the Department into disrepute. It is not clear to the Court that sufficient governmental interests in restricting all such conduct have been demonstrated. Nor is it clear that "substantially" narrow means by which to further such interests have been employed. Accordingly, the Court concludes that GPBA's facial overbreadth challenge against Rule 410.03 should survive the motion for summary judgment.

#### (2) Rule 410.67

■ The portion of Rule 410.67 challenged by GPBA and Wilson states that "[m]embers and employees of the Department are prohibited from engaging in any immoral or indecent conduct. . . ." In defense of this rule, the defendant cites *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), in which the Court pointed with approval to the language of Judge Leventhal in *Meehan v. Macy,* 129 U.S.App.D.C. 217, 230, 392 F.2d 822, 835 (1968), *modified,* 138 U.S.App.D.C. 38, 425 F.2d 469, *aff'd en banc,* 138 U.S.App.D.C. 41, 425 F.2d 472 (1969). There Judge Leventhal stated that "[t]he most conscientious of codes that define prohibited conduct of employees includes 'catchall' clauses prohibiting employee 'misconduct,' 'immorality,' or 'conduct unbecoming.'"

(Emphasis added.) It is true that unlike the record in *Parker v. Levy, supra,* there is nothing in the present record that indicates whether and how Rule 410.67 has been construed. Even so, the Court is of the opinion that the obvious approval shown by the Court in *Arnett* would extend to the challenged portion of Rule 410.67.

In response to the two-part test suggested by *McNea, supra,* defendant asserts the following: first, an officer who has engaged in adulterous conduct casts a poor light on the Department as a whole; the morale and discipline within the Department could suffer as a result of community disapproval; the effectiveness of the particular officer could be greatly limited; and where, as here, two Department members are involved in the affair, these problems are increased proportionately. The Court concludes that these interests are sufficient to justify any infringement on First Amendment rights. Secondly, defendant argues that the standard of conduct under 410.67 is much more circumscribed than the standard under 410.03, and the approval of such a standard by the Court in *Parker* clearly means that the second half of the *McNea* test has been met. The Court concurs in defendant's analysis and concludes as a matter of law that Rule 410.67 is not "substantially" overbroad on its face. Summary judgment for the defendant on this issue is, therefore, proper.

In so ruling, the Court expresses no opinion as to the constitutionality of the unchallenged portions of Rule 410.67.

### (b) Overbreadth as Applied

### (1) Rule 410.03

■ Wilson's overbreadth challenge will succeed if it can be shown that Rule 410.03 was enforced against him in order to punish conduct protected by the First and Fourteenth Amendments, and either the asserted governmental interests are insufficient to justify the Rule, or narrow means consistent with the furtherance of that interest have not been employed. The Court is of the opinion that adultery is not protected by the First Amendment's guarantee of freedom of association. *See Griswold v. Connecticut,* 381 U.S. 479, 499, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (Goldberg, J., concurring); *Poe v. Ullman,* 367 U.S. 497, 553, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting). Although these cases deal with the First Amendment right of privacy, it would be anomalous to find adulterous conduct to be protected by the right of association but not by the closely analogous right of privacy. *See also Berg v. Claytor,* 436 F.Supp. 76 (D.D.C.1977), *rev'd on other grounds,* 591 F.2d 849 (D.C.Cir. 1978); *Doe v. Commonwealth's Attorney for City of Richmond,* 403 F.Supp. 1199 (E.D.Va.1975), *aff'd without opinion,* 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 *rehearing denied,* 425 U.S. 985, 96 S.Ct. 2192, 48 L.Ed.2d 810 (1976); *Fisher v. Snyder,* 346 F.Supp. 396, 399 (D.Neb.1972), *aff'd,* 476 F.2d 375 (8th Cir. 1973).

■ Since the conduct in question is not protected by the First and Fourteenth Amendments, the inquiry becomes one of substantive due process: whether the rule is "so irrational that it may be branded 'arbitrary,' and therefore a deprivation" of Wilson's "liberty" interest in choosing his own lifestyle. *Kelley v. Johnson,* 425 U.S. 238, 248, 96 S.Ct. 1440, 1446, 47 L.Ed.2d 708 (1976). In view of the fact that Wilson's conduct is quite likely to bring the Department into disrepute, and in view of the various governmental interests that are furthered by the application of the rule to this behavior, the Court concludes that as a matter of law Rule 410.03 is not arbitrary, irrational or a deprivation of any liberty interest enjoyed by Wilson.

Even assuming that the conduct in question is protected by the First Amendment right to freedom of association, the Court concludes as a matter of law that Rule 410.03 is not unconstitutionally overbroad as to Wilson. The conduct is likely to bring the Department into disrepute. Thus, narrow means (enforcement of Rule 410.03 against Wilson for his participation in an extra-marital affair) have been employed to further the interests behind the Rule. Fur-

thermore, the governmental interests set out above are clearly substantial and outweigh any associational freedoms that might be curtailed by enforcement of Rule 410.03 against Wilson.

For the foregoing reasons, whether Wilson's attack on Rule 410.03 is based on overbreadth or substantive due process, the Court concludes as a matter of law that the defendant is entitled to judgment, and that summary judgment should be granted.

### (2) Rule 410.67

For the same reasons that Wilson's challenge against Rule 410.03 fails, so must his overbreadth or substantive due process claim based on the enforcement of Rule 410.67 against him. Summary judgment for the defendant in this regard is also proper.

### (c) Vagueness

### (1) Rule 410.03

Wilson's argument in this context is two-fold: first, that his conduct is protected by the First Amendment; and second, that a person of ordinary intelligence would have to guess whether his conduct is proscribed by the Rule. *Broadrick v. Oklahoma,* 413 U.S. at 607, 93 S.Ct. 2908. Since his conduct is not within the protection of that amendment, the prohibitions of the rule need not be set out with so great a degree of specificity as would be the case if the amendment did cover his behavior. *Smith v. Goguen,* 415 U.S. 566, 573, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). Furthermore, a person of ordinary intelligence would not hesitate to conclude that Wilson's conduct is in violation of the Rule. The Court so concludes as a matter of law. Summary judgment for the defendant as to Wilson's vagueness challenge is proper.

GPBA's vagueness challenge is somewhat stronger. There are types of First Amendment associational activity in which members of the Department could engage, but persons of ordinary intelligence might differ as to whether such conduct would bring the Department into disrepute. Summary

judgment on GPBA's claim of vagueness should not be granted for the defendant. Had the record contained examples of how the Rule had been interpreted in the past, a different result might have been reached. On the present record, however, judgment for the defendant as a matter of law would be improper.

### (2) Rule 410.67

For the reasons stated by the Court in ruling on GPBA's and Wilson's overbreadth claims, the Court concludes as a matter of law that Rule 410.67 is not unconstitutionally vague as to Wilson, nor on it's face. The rule is amply specific as to Wilson's conduct, and also as to any other conduct. Persons of ordinary intelligence need not guess as to the meaning of the rule nor differ as to its application in any context. The Court so concludes as a matter of law. Summary judgment against both vagueness claims is proper.

### Discriminatory Enforcement Claim

■ Wilson claims that Rule 410.67 has been used against him more severely than it has been used against others similarly situated in the past. Since Wilson has failed to allege that he is a member of a protected class and that the discrimination was based on such membership, the question to be answered is whether the action taken against Wilson was reasonably related to a legitimate governmental interest. *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). The action taken in this case was not irrational, unreasonable or arbitrary, even when compared with the treatment received by other officers in allegedly more egregious circumstances. It was clearly designed to further the Department's interest in its morale, discipline, effectiveness and reputation in the community. All of these interests are legitimate, and the Court so concludes as a matter of law. See *Hollenbaugh v. Carnegie Free Library,* 436 F.Supp. 1328 (W.D.Pa.1977), aff'd, 578 F.2d 1374 (3rd Cir.), cert. denied, —— U.S. ——, 99 S.Ct. 204, 58 L.Ed.2d 184

(1978). The defendant is entitled to summary judgment on this claim.

### Procedural Due Process Claim

 Although defendant has not briefed this segment of its motion for summary judgment as well as the others, the Court addresses it nevertheless. As stated before, due process is a fluid concept, and what procedural protections are required will vary with the facts of a given situation. However, where, as here, a right to be heard exists, that right must be accommodated at a meaningful time and in a meaningful manner. *Union of Concerned Scientists v. Atomic Energy Commission,* 163 U.S.App.D.C. 64, 499 F.2d 1069 (1974). This is especially true where one is charged with indecent and immoral conduct. *Cox v. Northern Virginia Transportation Commission,* 551 F.2d 555 (4th Cir. 1976).

 In the administrative context, however, due process does not require all the procedural safeguards of a criminal trial, and a trial-type hearing need not always occur. All that is required is that a party claiming a deprivation of life, liberty or property by adjudication be given prior notice and an opportunity for a hearing that is appropriate to the particular case. *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). In the instant case, the plaintiff received written notice of the charges against him; adequate time within which to prepare a response; the opportunity for a full departmental hearing with numerous procedural safeguards, including the right to counsel, the right to cross-examine witnesses, the right to offer his own witnesses, and the right to testify himself; the right to have counsel present on October 1 when he appeared before Chief Swing; and the right to appeal to the City Manager. Although serious charges were brought against Wilson, these procedural rights were clearly adequate and appropriate to his case.

 Wilson makes the alternative argument that the composition of the General Board of Inquiry that would have been called to hear his case would have been composed of his "accusers," and that as a result he had no choice but to waive his right to such a hearing. He cites this as another ground for his due process argument. This argument must be rejected. See *Aiello v. City of Wilmington,* 426 F.Supp. 1272 (D.Del.1976); *Hoke v. Board of Medical Examiners,* 395 F.Supp. 357 (W.D.N.C.1975).

The Court concludes as a matter of law that the notice of charges and opportunity for a hearing appropriate to Wilson's case were more than adequate to meet the requirements of procedural due process. Summary judgment for the defendant on this claim is proper.

### Damages and Other Relief

Having disposed of all of Wilson's claims, the Court concludes that any and all relief he seeks that might be based on those claims must be denied, and the Court so rules. The same applies to GPBA's attacks on Rule 410.67. It would be premature for the Court to rule on the outcome of GPBA's request for injunctive relief to prohibit the future use and enforcement of Rule 410.03, and the Court concludes that the defendant's motion for summary judgment in this regard should be denied. It should be granted as to all other claims for relief.

### Summary

For the reasons heretofore set out, the Court concludes that no genuine issue of material fact exists and defendant is entitled to judgment as a matter of law on the following claims asserted by Wilson: self-incrimination claim; departmental hearing waiver claim; right to counsel and waiver thereof claims; freedom of association claim, based on both vagueness and overbreadth as applied; discriminatory enforcement claim; and procedural due process claim. Defendant is entitled as well to judgment as a matter of law against GPBA's vagueness and overbreadth attacks

on Rule 410.67. Summary judgment is also proper as to any damages, back-pay, reinstatement or injunctive relief sought by Wilson or GPBA insofar as such relief is based on any and all of the above claims. On all of these issues, the motion for summary judgment should be granted.

The motion should be denied with respect to GPBA's vagueness and overbreadth attacks on Rule 410.03, and injunctive relief pursuant thereto.

To the extent indicated in the section of this Memorandum entitled "Summary," the Court GRANTS the defendant's motion for summary judgment in part, and DENIES the motion in part. A separate Judgment will be entered.

## APPENDIX

Rule 410.03 *Standard and Conduct.* Members and employees shall conduct their private and professional lives in such a manner as to avoid bringing the Department into disrepute.

Rule 410.67 *Immoral or Indecent Conduct.* Members and employees of the Department are prohibited from engaging in any immoral or indecent conduct, or association with known prostitutes, gamblers, known criminals, individuals of questionable character and reputation, or frequenting places of questionable reputation.

Rule 490.66 *Truthfulness.* Members and employees are required to be truthful at all times whether under oath or not.